NICOLE PALINKAS & others[1] *vs.* LAWRENCE BENNETT.

Middlesex. September 9, 1993. - October 8, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence*, Custom and usage, Judicial discretion. *Words*, "Habit."

In a medical malpractice action, the judge did not abuse his discretion in ruling admissible the defendant physician's testimony of his routine practice when discharging a newborn infant, including the advice he gave parents concerning proper care of their infants, in circumstances in which the physician had no present memory of discharging the infant plaintiff, where the testimony was evidence of a business habit or custom admissible to prove that an act was performed in accordance with the habit. [275-278]

CIVIL ACTION commenced in the Superior Court Department on August 13, 1986.

The case was tried before *James F. McHugh*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Elizabeth Mulvey* for the plaintiffs.

*Craig M. Brown* for the defendant.

NOLAN, J. Nicole Palinkas, a minor, and her parents brought this action against two physicians, Dr. Lawrence Bennett and Dr. Theodore Golden, alleging that the physicians' negligent treatment for Nicole caused her to suffer severe and permanent brain damage. After a jury trial and verdicts for the defendants, the Superior Court judge entered judgment for each defendant. The jury found that the defendant, Dr. Bennett, had not acted negligently and, upon discharging Nicole from his care, had disclosed to the plain-

---

[1]Stephen and Karen Palinkas, her parents.

tiff Karen Palinkas, Nicole's mother, information that he reasonably should have disclosed to her. Following a denial of the plaintiffs' motion for a new trial, the plaintiffs appealed only the judgment in favor of Dr. Bennett.

The plaintiffs' sole contention is that after Dr. Bennett testified as to having no memory of discharging Nicole, the trial judge erred in admitting Dr. Bennett's testimony regarding the instructions he would routinely furnish to parents when discharging a prematurely born infant on the issue of what instructions, if any, had Bennett furnished to Karen Palinkas when discharging Nicole. We transferred this case to this court on our own motion. Because we conclude that the trial judge did not abuse his discretion in ruling that Bennett's testimony pertained to Bennett's routine business practice, we affirm.

Nicole Palinkas was born two months premature on July 20, 1980. At birth she weighed four pounds, two ounces. She remained hospitalized until she weighed five pounds. The defendant physicians were her pediatricians. Nicole was discharged from the hospital on August 18, 1980. At home at that time were her sister, aged three and one-half years, and her brother, aged sixteen months, both sick with a flu-like illness. On August 21, Karen Palinkas noticed that Nicole appeared sick and would cry uncontrollably. Occasionally, Nicole also had a cross-eyed look and seemed to be holding her breath. Karen Palinkas then called the pediatricians' office. Dr. Golden returned her call and advised her to give Nicole a suppository. Nicole cried throughout that night and into the next morning. Nicole slept the remainder of August 22 and all of the next morning. During the afternoon of August 24, Nicole crossed her eyes and held her breath with greater frequency. Karen Palinkas again called the pediatricians' office and was advised by another physician to bring Nicole to the office immediately. Ultimately, Nicole was diagnosed as having viral encephalitis, an infection of her brain. Later she was diagnosed as having suffered anoxic brain damage due to lack of oxygen. The plaintiffs filed their

complaint on August 13, 1986, and trial commenced on March 25, 1991.

There was some dispute at trial as to whether Dr. Bennett or Dr. Golden discharged Nicole from the hospital on August 18, 1980. Karen Palinkas testified that she had spoken with Dr. Bennett at the hospital on that day and that Dr. Bennett had told her that he was discharging Nicole. Palinkas further testified that Dr. Bennett did not give her any advice, precautions, or instructions on protecting Nicole from infection. However, the hospital records indicate that Dr. Golden discharged Nicole. Neither Dr. Bennett nor Dr. Golden had any memory of discharging Nicole or of instructing Karen Palinkas. Over objection, however, the judge permitted Dr. Bennett to testify concerning the routine practice he follows when discharging a newborn infant from the hospital, including the advice he gives parents concerning the proper care for the infant. He testified concerning both his routine for regular newborns and his routine for prematurely born newborns. He admitted, and both the plaintiffs' and the pediatricians' experts agreed, that if he had not furnished Karen Palinkas with such instructions upon discharging Nicole, his conduct would have been negligent. He further testified that in 1980 he cared for approximately 200 newborns, approximately twelve of whom had been born premature, that he had been practicing pediatrics since 1961, and that he invariably followed these routines when discharging newborn infants.

Prior to trial, the plaintiffs filed a motion in limine requesting the judge to preclude any reference to Dr. Bennett's routine. Immediately prior to trial, the judge heard argument and denied the motion, deciding that Dr. Bennett's routine when discharging prematurely born infants was a routine business practice and not an individual habit. After trial, the plaintiffs filed a motion for a new trial, claiming the judge erred in admitting such testimony. This motion was likewise denied. The plaintiffs assert that evidence of a physician's routine habit in treating other patients is inadmissible to

prove that he acted in accordance with the habit in treating the patient in question.

Massachusetts draws a distinction between evidence of personal habit and evidence of business habit or custom. Evidence of a person's habits is inadmissible to prove whether an act was performed in accordance with the habit. *Figueiredo* v. *Hamill*, 385 Mass. 1003 (1982), and cases cited. Accordingly, this court has held inadmissible evidence of frequent drunkenness, *Commonwealth* v. *Rivet*, 205 Mass. 464, 466 (1910); of being a careful driver, *McDonald* v. *Savoy*, 110 Mass. 49 (1872); of being a careful and prudent person, *Tenney* v. *Tuttle*, 1 Allen 185, 186 (1861); of frequently engaging in fights, *Brennan* v. *Bongiorno*, 304 Mass. 476, 477 (1939); and of intemperance, *Carr* v. *West End St. Ry.*, 163 Mass. 360 (1895), to prove that a person acted in accordance with his respective habit on the occasion in issue. As this court stated 100 years ago, "[f]or the purpose of proving that one has or has not done a particular act, it is not competent to show that he has or has not been in the habit of doing other similar acts." *Commonwealth* v. *Nagle*, 157 Mass. 554, 555 (1893). Despite this rule, evidence of business habits or customs is admissible to prove that an act was performed in accordance with the habit. See P.J. Liacos, Massachusetts Evidence 423 (5th ed. 1981). For example, this court has upheld the admission of evidence of business habits or customs to prove that a letter had been sent, *Prudential Trust Co.* v. *Hayes*, 247 Mass. 311, 314 (1924); that an insurance application had not been blank when approved, *Santarpio* v. *New York Life Ins. Co.*, 301 Mass. 207, 210 (1938); that the police would have impounded money if found in a fugitive's possession, *Commonwealth* v. *Carroll*, 360 Mass. 580, 587 (1971); and that goods unaccompanied with a receipt had not been paid for, *Commonwealth* v. *Torrealba*, 316 Mass. 24 (1944). The fact that a habit is done by only one individual does not bar it from being a business habit. See *Mumford* v. *Coghlin*, 249 Mass. 184, 188 (1924) (testimony of notary of his usual procedure in protesting notes admitted to prove defendant received notice of protest); *Mayberry* v.

*Holbrook*, 182 Mass. 463, 465 (1903) (physician permitted to testify, although with no memory of rendering services in question, that he had rendered services to defendant because books he habitually kept indicated so); *McKay* v. *Myers*, 168 Mass. 312, 314 (1897) (plaintiff's routine practice admissible to show the he had properly mailed letter that he had written). In *Mayberry*, this court in dictum noted that a lawyer who habitually attests wills of his clients and who only attests wills in circumstances such that the certificate which he signs is true, should be able to state that the certificate is true even though he has no memory of signing it or of observing the testator. *Id.* at 464.

In this case, Dr. Bennett first had to establish affirmatively that his routine as to discharging prematurely born infants constituted a habit. *Noyes* v. *Boston & Me. R.R.*, 213 Mass. 9, 11 (1912). A habit is a regular response to a repeated situation with a specific type of conduct. See McCormick, Evidence § 195, at 826 (4th ed. 1992); Advisory Committee Notes, Proposed Mass. R. Evid. 406 (1980). Dr. Bennett testified that in the year that Nicole was allegedly discharged from his care, he cared for approximately 200 newborns, approximately twelve of whom were born prematurely, that he had been in practice since 1961, and that he had always followed one of two routines, depending on whether or not the infant had been born prematurely, when discharging an infant from his care. We may not conclude that the judge abused his broad discretion in deciding preliminary questions of fact when he determined that Dr. Bennett's routine practice concerning discharging prematurely born infants was a habit. *Ricciutti* v. *Sylvania Elec. Prods. Inc.*, 343 Mass. 347, 351 (1961).

As the judge noted in his memorandum accompanying his denial of the plaintiffs' motion for a new trial, often the line between a personal habit and a business habit is not a bright one. A trial judge has broad discretion in making this determination and only when a trial judge's ruling is clearly wrong should it be overruled. See *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960). As noted above, Dr. Ben-

nett testified that he invariably followed the same routine when discharging premature infants throughout his thirty years of practice as a licensed pediatrician during which he discharged hundreds of such infants. Also, in light of the fact that the trial occurred almost eleven years after the incident in question, the judge could have properly determined that Dr. Bennett's testimony concerning the routine practice he invariably followed when discharging premature infants was, as a practical matter, the only way Dr. Bennett could refute Karen Palinkas' testimony that he had failed to give her any instructions when he discharged Nicole. We cannot conclude that the judge abused his broad discretion by viewing Dr. Bennett's routine practice when discharging premature infants from his care as a business habit and admitting Dr. Bennett's testimony on the issue of the circumstances attending Nicole's discharge.

*Judgment affirmed.*
*Order denying motion for*
*new trial affirmed.*