## COMMONWEALTH vs. ALEXANDER WILLIAMS.

Suffolk. December 6, 2007. - March 21, 2008.

Present: MARSHALL, C.J., IRELAND. SPINA, CORDY, & BOTSFORD, JJ.

*Homicide. Self-Defense. Practice, Criminal,* Capital case, Instructions to jury, Presumptions and burden of proof, Argument by prosecutor, Assistance of counsel. *Evidence,* Admissions and confessions, Self-defense, Pattern of conduct, Prior violent conduct. *Constitutional Law,* Assistance of counsel.

At a murder trial, the judge's instructions defining self-defense did not shift the burden of proof, where the language used did not tell the jury that they were required to make any findings or that the defendant was required to prove anything, but rather simply outlined the scope of what the law recognizes as self-defense, so that the jury could understand what the Commonwealth had to disprove in order to obtain a murder conviction; further, the judge clarified how the jury were to use this definition by stating that the Commonwealth had the burden of disproving self-defense three times at the beginning of the judge's explanation of what constitutes self-defense and no fewer than seven times at the conclusion of it. [882-885]

At a murder trial where the defendant claimed he acted in self-defense, the judge erred in admitting in evidence a witness's testimony that she had never seen the victim with a gun, to the extent that the jury might have considered such evidence as probative of the victim's character and, thus, the identity of the first aggressor; however, in light of the context in which the testimony was introduced (which suggested that the focus was on whether the victim was carrying a weapon on the night he died, not his character) and the trial as a whole, the judgment was not substantially swayed by the error. [886-888]

No substantial likelihood of a miscarriage of justice arose at a murder trial from the prosecutor's closing argument, where the prosecutor's statements were proper comments on the believability of the defendant's position that he had acted in self-defense, and as such, those comments were an attempt to meet the Commonwealth's burden to disprove self-defense rather than an effort to place a burden on the defendant. [888-889]

At a murder trial, the defendant's counsel was not ineffective in failing to make an opening statement to alert the jury to the issue of self-defense, which was a reasonable tactical decision where counsel did not plan to offer any witnesses and where counsel was unsure whether the defendant would choose to testify [889]; nor was counsel ineffective for failing to object to certain portions of the prosecutor's closing argument, where the prosecutor's inappropriate rhetorical flourish regarding justice delayed and denied did not create a substantial likelihood of a miscarriage of justice, and where counsel may reasonably have concluded that more harm than

good would come from calling attention to the prosecutor's reference to a well-known but tired adage [889-891]; finally, the defendant failed to demonstrate a factual basis for his claim that counsel was ineffective for acquiescing in the redaction of portions of the defendant's statement to police relating to the victim's reputation for violence [891-892].

This court declined to exercise its authority under G. L. c. 278, § 33E, to reduce the criminal defendant's conviction of murder in the first degree or to order a new trial, where although the trial record evinced several troubling elements, those elements did not affect the jury's verdict or create a substantial likelihood of a miscarriage of justice. [892-893]

INDICTMENT found and returned in the Superior Court Department on March 23, 2001.

The case was tried before *Robert A. Mulligan*, J.

*Charles K. Stephenson* for the defendant.

*Anne M. Thomas*, Assistant District Attorney (*Patrick Haggan*, Assistant District Attorney, with her) for the Commonwealth.

BOTSFORD, J. On May 27, 2003, a jury convicted the defendant, Alexander Williams, of murder in the first degree of Randy Jackson by reason of extreme atrocity or cruelty.[1] In a statement made to the police, the defendant admitted that he shot the victim several times but claimed that he had acted in self-defense. Represented by new counsel on appeal, the defendant challenges the judge's instructions on self-defense, arguing that they impermissibly shifted the burden of proof. He further argues that this error was exacerbated by the erroneous admission of certain evidence and by improprieties in the prosecutor's closing argument. The defendant also claims that his trial counsel provided constitutionally ineffective assistance of counsel in several respects. We reject the defendant's arguments, and, after reviewing the entire case, we decline to exercise our authority under G. L. c. 278, § 33E, to reduce the degree of guilt or order a new trial.

1. *Background.* On the night of April 15, 1991, the victim, Randy Jackson, was shot to death in the Dorchester section of Boston. At the defendant's trial, the Commonwealth presented evidence from which the jury could have found the following. The defendant and the victim, both age twenty-two, had long

---

[1]The jury rejected the Commonwealth's theory of deliberate premeditation.

known each other while growing up and living in Dorchester. On the evening of April 15, 1991, the victim was walking with his girl friend, Vanessa Bell, on Blue Hill Avenue in Dorchester, near its intersection with Irwin Avenue. He was carrying a car radio under his arm. The defendant stepped out of an automobile that had pulled up nearby and hailed the victim. The two began what Bell described as a normal conversation, and, leaving them together, Bell crossed Blue Hill Avenue and entered a liquor store in search of matches to light her cigarette. While she was in the store, Bell heard several gunshots, and she emerged from the store to see the victim running across Blue Hill Avenue toward her from the entrance to Irwin Avenue. He collapsed on the sidewalk in front of her and was pronounced dead shortly thereafter. The defendant had left the scene.

The victim had received four gunshot wounds: one in the back or side of his right arm, one in his mid-back, and two in his buttocks. Police recovered five spent shell cartridges in a diagonal line across Irwin Avenue, in a pattern suggesting that the shooter was moving as he repeatedly pulled the trigger of a semiautomatic weapon.

Although Vanessa Bell spoke to the police immediately after the victim's death, she did not know the person with whom she had seen the victim when she walked into the liquor store. For several years the police had no information on the identity of the shooter. In 1996, the police interviewed a witness, Gregory Whigham, who told them that the defendant had been the shooter. In 1998, Vanessa Bell and Trina Pickard White, another friend of the victim who had seen the victim talking with a man on the night of his murder, each identified the defendant as that man in a photographic array shown by the police.

In June of 1998, the police interviewed the defendant, who, in a tape-recorded statement, admitted to shooting the victim but said he had acted in self-defense. In particular, the defendant told the police that he and the victim had argued on the street, and that the victim started to walk or run away across the street but then turned back and approached to within five feet of the defendant while reaching for something inside his jacket. Thinking the victim was reaching for a weapon, the defendant pulled his own gun and fired four or five times. The defendant also

stated that he had been wearing a bulletproof vest and carrying his gun without the safety engaged. At trial, the Commonwealth argued that the defendant killed the victim because the victim either owed him money or had shown him disrespect. Gregory Whigham (who had identified the defendant in 1996) testified that he had been at the scene of the shooting in 1991 and that the defendant had later threatened him to prevent him from going to the police and had also explained that he, the defendant, did "what he had to do" because the victim owed him money. Likewise, Joanna Smoot, the defendant's former girl friend, testified that the defendant told her he had shot a man, possibly in a dispute over drugs or money. Finally, the Commonwealth presented the defendant's tape-recorded statement, in which he stated that the victim had beaten him and robbed him in the past and that he had approached the victim that night in order to demand greater respect from him.

2. *Jury instructions on self-defense.* Where the evidence raises a question of self-defense, the burden is on the government to prove beyond a reasonable doubt that the defendant did not act in self-defense. *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 687-688 (1976). The defendant here asserts that, in instructing on self-defense, the judge erroneously implied that the defendant had the burden of proving that his actions satisfied the elements of a self-defense claim, thereby depriving him of his constitutional right to due process. "Because he did not object to the instruction[] at trial, we review for a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Niemic*, 427 Mass. 718, 720 (1998), citing *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).

The defendant acknowledges that "[w]e evaluate the instruction[s] as a whole, looking for the interpretation a reasonable juror would place on the judge's words," rather than "scrutiniz-[ing] bits and pieces removed from their context." *Commonwealth* v. *Niemic*, 427 Mass. at 720, quoting *Commonwealth* v. *Trapp*, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996), and *Commonwealth* v. *Perez*, 390 Mass. 308, 313 (1983). He also concedes that "both in introducing and summarizing the issue of self defense, the judge repeatedly stated that the burden of proof rested on the government" and that we have often

found such proper statements to outweigh errors in subsidiary parts of an instruction. See, e.g., *Commonwealth* v. *Waite*, 422 Mass. 792, 806-807 (1996); *Commonwealth* v. *Torres*, 420 Mass. 479, 488-491 (1995). Nevertheless, the defendant contends that burden-shifting errors in the judge's specific discussion of the elements of self-defense may have led jurors to conclude that the defendant had an obligation to show that one or more of these elements was present in this case, despite the appropriate bookend instructions on the Commonwealth's burden of proof. The defendant argues that the correct general statements do not cure the alleged error because they merely contradict it and do not, "through explanation, harmonize[] it with the entire charge." *Commonwealth* v. *Repoza*, 400 Mass. 516, 520, cert. denied, 484 U.S. 935 (1987), citing *Francis* v. *Franklin*, 471 U.S. 307 (1985). Given what he perceives as an inconsistency, the defendant asserts that "it cannot be determined with confidence which instructions the jury followed."

The judge's instructions in this case were based on the Model Jury Instructions on Homicide (1999). The judge first mentioned self-defense in defining the first element of murder in the first degree, an unlawful killing; he explained that a killing in self-defense is not unlawful, and that the Commonwealth must prove the defendant did not act in self-defense. The judge returned to self-defense after defining murder in the second degree. At that point, in accordance with the order suggested by the model homicide instructions, the judge explained that to prove the defendant acted with malice, the Commonwealth must prove an absence of mitigating circumstances, and in particular, to prove murder (in either degree), the Commonwealth must prove the absence of use of excessive force in self-defense. The judge then launched into a discussion of self-defense, and it was in this context that he made the statements to which the defendant objects. He said, "So let me take up for a moment self-defense. What is the law of self-defense? A homicide is excused and therefore not a crime if it results from the proper exercise of self-defense." The judge then went on to describe the circumstances in which a killing is excused for self-defense; for example, he said: "In order to defend oneself with a dangerous weapon . . . the person using the weapon must have a reasonable apprehen-

sion . . . of great bodily harm or death, and a reasonable belief that no other means would suffice to prevent such harm"; "[a] person may not use force in self-defense until he has availed himself of all proper means to avoid physical combat, including leaving the scene"; and "[a] person may use no more force than is reasonably necessary in all the circumstances to defend himself."

The defendant contends that language such as "the person using the weapon must have a reasonable apprehension" could suggest to the jury that the defendant was required prove he satisfied the elements of self-defense in order to avoid a murder verdict. The defendant looks for support to *Connolly* v. *Commonwealth*, 377 Mass. 527, 532, 534 (1979), in which we held that instructions containing the language "[i]n order to find the defendant . . . was justified [in acting in self-defense] you must find that the deceased . . . assailed the defendant" impermissibly suggested that "it was the defendant who was required to wield the laboring oar" on self-defense.

However, we have rejected attempts to equate "must have" and "must be" language with the "finding" language at issue in the *Connolly* case. See *Commonwealth* v. *Pov Hour*, 446 Mass. 35, 41-42 (2006); *Commonwealth* v. *Nunes*, 430 Mass. 1, 5-6 (1999). Language such as "the person . . . must have" and "[a] person may not" does not tell the jury they are required to make any findings or that the defendant is required to prove anything. Rather, it simply outlines the scope of what the law recognizes as self-defense, so that the jury could understand what the Commonwealth has an obligation to *disprove* in order to obtain a murder conviction. This distinction — between a definition of self-defense in the abstract and a statement of what must be proved and by whom — is particularly clear in the judge's instructions in this case, because he highlighted the shift in focus by saying, "[L]et me take up for a moment self-defense. What is the law of self-defense?" The judge also clarified how the jury were to use the definition by stating that the Commonwealth had the burden of disproving self-defense three times at the beginning of his explanation of what constitutes self-defense, and no fewer than seven times at the conclusion of it. Looking at the instruction as a whole, we are confident that no reasonable juror could have concluded it was the defendant's

burden to prove self-defense.[2],[3] *Commonwealth* v. *Repoza*, 400 Mass. 516, 522, cert. denied, 484 U.S. 935 (1987). There was no error.[4]

---

[2]The defendant also criticizes the judge's use of the phrase "*proper* exercise of self-defense" (emphasis supplied), which comes directly from the Model Jury Instructions on Homicide 55, 57 (1999). He argues that the language may be understood to impose on the defendant an obligation to show that his actions were "proper." We disagree. The word "proper," as used in the portion of the instructions explaining the general law of self-defense, is intended to describe the situation when all three elements that make up the concept of self-defense are present, that is, the person exercising self-defense "(1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Souza*, 428 Mass. 478, 486 (1998), quoting *Commonwealth* v. *Torres*, 420 Mass. 479, 492 (1995). Thus, the word "proper" is used in the instructions to distinguish between a complete defense that requires acquittal and extenuating circumstances that negate malice but leave a defendant open to a conviction of manslaughter as a result of the use of excessive force in self-defense.

[3]The defendant has proposed an alternative instruction on self-defense to address the flaw he perceives in the instructions used by the judge in his case. With a few editorial changes, his suggested instruction reads:

> "There was evidence in this case that the defendant acted in self-defense. When such evidence is presented, in order to prove the defendant guilty of murder, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. The Commonwealth may satisfy that burden by proving beyond a reasonable doubt any one of the following propositions: (1) the defendant did not subjectively believe he was in imminent danger of serious injury or death; (2) even if the defendant believed he was in such danger, his belief was not objectively reasonable; or (3) the defendant failed to avail himself of other available alternatives before employing deadly force."

Although we conclude that the model instructions, as used in this case, adequately conveyed the Commonwealth's burden to disprove self-defense, the defendant's formulation offers a clear and succinct summary of the Commonwealth's burden that could be explained to the jury near the conclusion of the model jury instructions on self-defense.

[4]As noted, the judge followed the Model Jury Instructions on Homicide. However, there were two omissions in the instructions related to self-defense that the defendant does not address on appeal. First, the judge never specifically explained to the jury that if they found the Commonwealth had failed to prove beyond a reasonable doubt that the defendant had not acted in proper self-defense, they should find the defendant not guilty of any crime; rather, the judge only stated that if the jury had a reasonable doubt as to whether the

3. *Admission of habit evidence.* The defendant challenges the admission, over his objection, of Vanessa Bell's testimony that she had never seen the victim with a gun. He argues that this testimony amounted to inadmissible habit evidence and that, combined with other alleged errors, it impermissibly undermined his defense of self-defense by portraying the victim as a peaceful person.

The defendant is correct that evidence of personal habit is inadmissible "to prove that a person acted in accordance with his . . . habit on the occasion in issue." *Palinkas* v. *Bennett,* 416 Mass. 273, 276 (1993), and cases cited. However, Bell also testified, properly, that she did not see the victim carrying a gun or a knife on the night he died, and, according to police and medical witnesses who described the murder scene, no gun was found on or near the victim. Thus, if the defendant's claim is that the jury may have used the challenged statement as evidence of habit from which to infer that the victim did not have, and was not reaching for, a gun when the defendant shot him, the statement is cumulative of the proper testimony of Bell and other witnesses.[5]

___

defendant had acted in self-defense but the Commonwealth had proved beyond a reasonable doubt that the force used by the defendant was excessive, they could not find the defendant guilty of murder but should find him guilty of manslaughter. Second, the judge never specifically defined the elements of the crime of manslaughter in the affirmative — that is, he never told the jury that to obtain a conviction of manslaughter the Commonwealth had to prove beyond a reasonable doubt (1) an intentional, unlawful killing by the defendant and (2) (in this case) the defendant's excessive use of force in self-defense.

Although these deviations from the model instructions detracted from the clarity of the instructions as a whole, they did not create a substantial likelihood of a miscarriage of justice. First, given the overwhelming evidence of excessive force presented at trial, and the fact that the jury found that the defendant had killed the victim with extreme atrocity or cruelty, a verdict of manslaughter was the only conceivable alternative to murder; acquittal was not a realistic possibility. Moreover, the judge did state that a killing resulting from "proper" (i.e., not excessive) exercise of self-defense is excused and not a crime. As to the second deficiency, while a stand-alone definition of manslaughter would have been helpful, the judge properly laid out the analysis the jury should undertake in the context of this case, so that it was clear to them that manslaughter was the appropriate verdict if they found (1) reasonable doubt as to whether the defendant had acted in self-defense, and (2) assuming he had so acted, that the Commonwealth had proved beyond a reasonable doubt that he had used excessive force.

[5]The statement is also cumulative if used to conclude that the defendant's

The core of the defendant's argument, however, is that the prosecutor presented the challenged statement as evidence of the victim's peaceful character without the defendant's having "opened the door" with evidence of the victim's violent character, and after the prosecutor had succeeded in keeping out of evidence several references to the victim's quarrelsome or violent character and reputation for violence.[6] To the extent the jury may have considered this evidence as probative of the victim's character and thus the identity of the first aggressor, its admission was error. *Commonwealth* v. *Lapointe*, 402 Mass. 321, 325 (1988) ("before [evidence of] peacefulness is admissible, the defense must open the door by presenting *some evidence* of the victim's violent character" [emphasis in original]). However, the context in which the challenged question and answer were introduced suggests that the focus was on whether the victim was carrying a weapon on the night he died, and not on his character.[7] Consistent with this view, the prosecutor in his closing argument emphasized that the victim was unarmed but did not refer to his habit of not carrying a gun, or suggest

---

claimed fear of the victim was unreasonable, as the defendant himself admitted in his statement to the police that he had never seen the victim with a gun before that night.

[6] The exclusion of the defendant's description of the victim's reputation for violence is discussed in part 5, *infra*.

[7] The questioning proceeded as follows:

> THE PROSECUTOR: "At any point that night did you see [the victim] with any type of weapon?"
>
> THE WITNESS: "No."
>
> THE PROSECUTOR: "Have you ever seen [the victim] with a gun?"
>
> THE WITNESS: "No."
>
> DEFENSE COUNSEL: "Objection."
>
> THE JUDGE: "Overruled. The answer will stand."
>
> THE PROSECUTOR: "This night did you see [the victim] with any type of knife or any other weapon?"
>
> THE WITNESS: "No."

As explained *supra*, the use of habit evidence to prove behavior in conformity with the habit on a particular occasion is generally improper, but in this case

that the victim had a peaceful character. Viewing this single challenged statement in the light of its immediate context and the trial as a whole, we can say "with fair assurance . . . that the judgment was not substantially swayed by the error." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

4. *Prosecutor's closing argument.* The defendant further argues that the prosecutor made improper remarks in his closing argument that, when combined with the allegedly erroneous self-defense instruction and the evidentiary ruling just discussed, created a substantial likelihood of a miscarriage of justice.[8]

In particular, the defendant objects to the prosecutor's thrice-repeated assertion that the defendant "now . . . hides behind the convenient veil of self-defense" and his argument that, in the statement to the police, the defendant "tr[ied] to twist things a little bit to give himself some self-defense. "The defendant claims these remarks were in fact counter to the evidence because he cooperated with the police and thus was not seeking to "hide." He also argues that the prosecutor's use of the words "now," "hide[] behind a veil," and "twist things" suggested that the defendant had actively staked out a misleading position at trial, despite the fact that he presented no evidence, and thus had some burden to support it.

The prosecutor's closing argument did not suffer from the faults the defendant describes. It is clear from the context that in suggesting the defendant had fabricated the self-defense version of events after the fact, the prosecutor was generally referring to the discrepancies between other evidence of the killing and the defendant's description of it to the police some years after it occurred. To the extent the prosecutor was referring to the defendant's trial strategy, the comment was not improper because the defendant did in fact mount a defense — through cross-examination and closing argument — that was based on undermining the Commonwealth's attempt to prove that he did not act in self-defense. The prosecutor's statements were proper

there was sufficient other evidence that the victim was unarmed on the night he was shot to make the error harmless.

[8]The defendant did not object to this aspect of the Commonwealth's closing argument at trial.

comments on the believability of the defendant's position that he had acted in self-defense. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 516 (1987) (prosecutor may "argu[e] forcefully for a conviction based on . . . inferences that may reasonably be drawn from the evidence"). As such, they do not appear to represent an effort to place a burden on the defendant but rather are an attempt to meet the Commonwealth's burden of disproving self-defense. There was no error.

5. *Ineffective assistance of counsel.* Finally, the defendant argues that his trial counsel was constitutionally ineffective, because counsel (1) failed to make an opening statement to alert the jury to the issue of self-defense; (2) failed to object to certain portions of the prosecutor's closing argument; and (3) acquiesced in the redaction of portions of the defendant's police statement relating to the victim's reputation for violence. We briefly dispose of the first two of these arguments before turning to the third.

The defendant acknowledges that "[f]ailure to make an opening statement is not sufficient to support a claim of ineffective counsel." *Commonwealth* v. *Scott*, 430 Mass. 351, 357 (1999), citing *Commonwealth* v. *Cohen*, 412 Mass. 375, 391 (1992). Nevertheless, he argues that the lack of an opening in this case was error, and that counsel's omission should be considered in conjunction with his other alleged errors. We disagree. Waiving an opening statement is a reasonable tactical decision, particularly where defense counsel does not plan to offer any witnesses, *Commonwealth* v. *Scott, supra,* or where, as appears to have been the case here, counsel is unsure whether the defendant will choose to testify. We decline to second-guess this "matter of professional judgment," even as an element of counsel's overall performance in this case. *Id.,* quoting *Commonwealth* v. *Cohen, supra.*

The defendant's complaint about his counsel's failure to object to several parts of the prosecutor's closing argument focuses on the prosecutor's statements discussed in part 4, *supra,* and also on his concluding exhortation that "[j]ustice delayed . . . should not mean justice denied."[9] We have already

---

[9]The prosecutor's final sentences were as follows:

"It has been twelve long years since [the victim] was murdered. It's

concluded that the former statements were not improper. The defendant claims the latter comment implied that the twelve-year interval between the killing and the trial was entirely attributable to the defendant's intimidation of witnesses, when in fact at least five years of the delay were traceable to the Commonwealth.[10] He argues that the statement unfairly suggested to the jury that they had a duty to rectify the defendant's evasion of justice.

The prosecutor's closing rhetorical flourish about justice delayed and denied crossed the line of proper argument. This is so both because of the rhetoric itself and because in the circumstances, there was very little factual basis for the rhetoric: the record supports the defendant's claim that close to one-half of the twelve-year delay was attributable to the Commonwealth. Nevertheless, we do not believe the remark created a substantial likelihood of a miscarriage of justice. "A certain measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed." *Commonwealth* v. *Kozec*, 399 Mass. at 517. See *Commonwealth* v. *Francis, ante* 132, 140-141 (2007) (prosecutor's use of phrase "justice delayed is justice denied" in closing argument improper but did not create substantial likelihood of miscarriage of justice where it came "at the end of a lengthy closing argument" and was mitigated "by instruction from the judge that opening and closing arguments are not evidence"); *Commonwealth* v. *Daye*, 435 Mass. 463, 477, 478 (2001) (prosecutor's "rhetorical question, albeit inappropriate, [did not] give[] rise to any substantial likelihood of a miscarriage of justice," and therefore counsel was not ineffective for failing to object). Moreover, the decision whether to object to

been less than a week since you've been impaneled [*sic*]. Despite his best efforts to get the snitches not to come forward, the snitches did come forward, and the truth is now known. Justice delayed, ladies and gentlemen, should not mean justice denied. Through your verdict speak the truth. The time for justice is right now. The time for accountability is right now. His time is right now."

[10]The government did not interview the defendant until two years after learning of his involvement in the shooting and did not charge him with murder until three years after obtaining his statement. The Commonwealth had successfully moved in limine to exclude mention of government-caused delay from the trial. In contrast, evidence of the delay itself, and of the defendant's efforts to prevent a witness from coming forward, was before the jury.

opposing counsel's closing is a matter of trial strategy, and defense counsel may reasonably have concluded that more harm than good would come from calling attention to the prosecutor's reference to a well-known but perhaps tired adage.

We turn finally to the defendant's third claim. He argues that his trial counsel was ineffective in agreeing to certain redactions of his statement to the police, which was played for the jury at trial. Perhaps at defense counsel's behest, the statement was edited to omit references to the defendant's incarceration at the time of its recording and his previous gang membership, possession of guns, and drug use; at the urging of the prosecutor, the defendant's comments reflecting his knowledge of the victim's reputation for violence were also removed. It is the omission of statements in this last category to which the defendant now objects. In particular, because of the redaction, the jury did not hear the defendant say that he knew the victim "from the neighborhood as a bully, someone that was, eh, a junky. He would break into people's houses, robbed people; eh, extort people; everything," and that the victim had a reputation for "[b]reaking into cars, bopping people over the head and taking their wallets with pipes and shit like that; breaking into people's houses. You know. Intimidating people, you know."

The prosecutor's motion to redact the statement was the subject of discussion among the judge, the prosecutor, and defense counsel at a pretrial hearing. Before the judge went through the proposed redactions individually, defense counsel stated with regard to the motion as a whole, "I don't really have any objection because [the statement] does cover a period when the defendant was in custody, and what's fair for the goose is fair for the gander." As to the particular statements at issue, the prosecutor explained, "the Commonwealth is seeking to exclude any general reputation of the victim evidence unless it relates to things the victim has done to the defendant in particular, and not just general reputation as a bully in the neighborhood"; defense counsel replied, "No objection."

When self-defense is at issue, "evidence of 'the character of [the victim] as a powerful, dangerous, quarrelsome or violent person, if known to the defendant, may be admitted' as evidence of the defendant's 'apprehension for his own safety, and the

reasonableness of that apprehension.' " *Commonwealth* v. *Edmonds*, 365 Mass. 496, 501 (1974), quoting *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 (1945). The defendant's description of the victim's quarrelsome or violent character and reputation was clearly admissible under this rule. Moreover, it was not, as the Commonwealth suggests, cumulative of the defendant's statements, which did come in, that the victim used to beat him and rob him; these latter statements supported the Commonwealth's theory that the defendant killed for revenge and respect as much as a theory of self-defense.

Nevertheless, although this evidence was admissible and relevant, it clearly appears from the motion hearing transcript that defense counsel was acting on the basis of what he perceived to be a necessary quid pro quo: he agreed to the exclusion of some statements helpful to the defendant in exchange for the exclusion of others that were harmful. We have consistently emphasized that "the preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial." *Commonwealth* v. *Zinser*, 446 Mass. 807, 810 (2006), and cases cited. A motion for a new trial allows for the presentation of evidence, including an "explanation by trial counsel for his actions." *Id.* at 811, quoting *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002). The exception to this rule that we have recognized, namely, "when the factual basis of the claim appears indisputably on the trial record," does not encompass this case. *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). Without the benefit of a hearing on a motion for a new trial, at which the defendant's trial counsel might explain his strategy in agreeing to the redactions, we are unable to evaluate the reasonableness of that strategy. While we cannot speculate about what a hearing on a motion for new trial might reveal, on the record now before us, we discern no "serious failure[s]" on the part of trial counsel, *Commonwealth* v. *Harbin*, 435 Mass. 654, 656 (2002), that, either individually or in combination, were "likely to have influenced the jury's conclusion," *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).

6. *Review under G. L. c. 278, § 33E.* We have reviewed the entire record and find no reason to exercise our authority under G. L. c. 278, § 33E, to reduce the defendant's conviction or

order a new trial. Although the trial record evinces several troubling elements — including some discussed herein, as well as the prosecutor's persistently leading questions during direct examination and the admission of evidence of criminal activity on the part of a cohort of the defendant — we are convinced that they did not affect the jury's verdict or create a substantial likelihood of a miscarriage of justice. The evidence suggested that the defendant, while wearing a bulletproof vest, shot the unarmed victim four times as the victim ran away and the defendant pursued him. The jury's conclusion that the defendant did not act in self-defense was supported by ample evidence, and it is not our role to second-guess their determinations of credibility and reasonableness.

*Judgment affirmed.*