Laura COONEY–KOSS and
Jerome Koss, Plaintiffs
Below, Appellants,

v.

Jennifer H. BARLOW, M.D., Defendant
Below, Appellee.

A. Diane McCracken, M.D., and All
About Women of Christiana Care,
Inc., Defendants Below, Appellants,

v.

Laura Cooney–Koss and Jerome Koss,
Plaintiffs Below, Appellees.

Nos. 162, 2013, 161, 2013.

Supreme Court of Delaware.

Submitted: Dec. 11, 2013.
Decided: March 7, 2014.

Gregory S. McKee, Esquire, (argued), and Joshua H. Meyeroff, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware, for Appellants A. Diane McCracken, M.D. and All About Women of Christiana Care, Inc. and Cross–Appellee Jennifer H. Barlow, M.D.

Robert J. Leoni, Esquire, (argued), and Gilbert F. Shelsby, Jr., Esquire, Shelsby & Leoni, Wilmington, Delaware, for Appellees/Cross–Appellants Laura Cooney–Koss and Jerome Koss.

Before HOLLAND, BERGER and JACOBS, Justices.

BERGER, Justice:

In this medical malpractice action we consider whether the Superior Court committed reversible error by denying appellants' motion for judgment as a matter of law, and by excluding certain evidence. The trial court correctly determined that appellees' medical expert evidence supported a verdict in their favor. Thus, its denial of the motion for judgment as a matter of law is affirmed. The trial court's

evidentiary rulings, however, constituted an abuse of discretion requiring a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 22, 2010, Dr. Jennifer Barlow performed a Caesarean section on Laura Cooney–Koss to deliver her baby. There were no apparent complications from the delivery, and Laura was discharged from Christiana Hospital three days later. On the morning of May 2, 2010, Laura suffered heavy vaginal bleeding, and she returned to the hospital by ambulance.

In an attempt to slow or stop her bleeding, a hospital physician gave Laura medicine to contract her uterus. The doctor then took an ultrasound of Laura's uterus, and determined that she would need a procedure known as a dilation and evacuation ("D & E"). Dr. A. Diane McCracken performed the D & E, removing blood clots and debris from Laura's uterus. During that procedure, McCracken actively massaged Laura's uterus and gave her additional medicine to try to stop her bleeding. Those efforts were unsuccessful.

McCracken tried to find other possible sources of the bleeding by performing a laparotomy. Throughout that procedure, McCracken again massaged Laura's uterus. The laparotomy was unrevealing, and Laura continued to bleed. During the 30 minutes that McCracken had been treating her, Laura lost approximately one liter of blood. McCracken decided to perform a hysterectomy, believing that Laura would die otherwise. The doctor removed Laura's uterus, and Laura eventually stopped bleeding.

On October 22, 2010, Laura and her husband, Jerome Koss, filed a complaint in Superior Court against McCracken, Barlow, their employer, All About Women of Christiana Care, Inc.,[1] and Christiana Care Health Services, Inc.[2] The complaint alleges that McCracken negligently failed to undertake an appropriate number of conservative treatment options to stop Laura's bleeding before performing the hysterectomy, which was unnecessary. After trial, the jury returned a verdict in favor of the Kosses. The Superior Court denied McCracken's motions for judgment as a matter of law or for a new trial.[3] This appeal followed.

## DISCUSSION

McCracken appeals from the trial court's denial of her motion for judgment as a matter of law, as well as several evidentiary rulings. She argues that the trial court should have granted her motion because the Kosses' expert agreed with McCracken's expert that it is appropriate to perform a hysterectomy if vaginal bleeding is not controlled by more conservative measures. As to the evidentiary rulings, McCracken contends that the trial court abused it discretion by: (1) excluding the testimony of Laura's treating anesthesiologist; (2) excluding medical records and corresponding expert testimony indicating that Laura suffers from a bleeding disorder that predisposes her to significant risk of hemorrhage;[4] and (3) prohibiting

---

1. McCracken and All About Women of Christiana Care, Inc. are referred to collectively as "McCracken," unless the context requires otherwise.

2. Christiana Health Services, Inc. was voluntarily dismissed from the suit on February 7, 2012.

3. *Cooney–Koss v. Barlow*, 2013 WL 1400899 (Del.Super. Feb. 28, 2013).

4. McCracken also claims that the Kosses' statement, in closing argument, that the jury should "hold [her] accountable" caused unfair prejudice. She did not object at trial, and we agree with the trial court that there was

McCracken from using medical literature to cross-examine the Kosses' standard of care expert.

### I. Motion for Judgment as a Matter of Law

██ At trial, Dr. William Spellacy, the Kosses' standard of care expert, testified on direct examination that McCracken had breached the standard of care by not exhausting appropriate conservative treatment options before performing the hysterectomy.[5] On cross-examination, Spellacy agreed that, if a doctor exhausts all other medical options and a patient continues to bleed, then "a hysterectomy is the last option you would come to."[6] Relying on that statement, McCracken says that "the undisputed testimony was that [she] made an appropriate and good-faith decision" to remove Laura's uterus.[7]

The record does not support McCracken's claim. Spellacy did not testify that McCracken exhausted all appropriate conservative treatment options; nor did Spellacy testify that McCracken exercised appropriate medical judgment by removing Laura's uterus. To the contrary, Spellacy testified that McCracken breached the standard of care by failing to attempt more conservative treatment options before resorting to a hysterectomy. Viewing the evidence in the light most favorable to the Kosses, Spellacy's expert testimony raises an issue of material fact for consid-

eration by the jury.[8] Therefore, the Superior Court correctly denied McCracken's motion for judgment as a matter of law.

### II. Exclusion of the Treating Anesthesiologist's Testimony

██ McCracken attempted to call Dr. Tak Lui, the treating anesthesiologist during Laura's hysterectomy, as a fact witness. During his deposition, Lui testified that he had no memory of the May 2010 procedure, and that the notes from surgery did not refresh his recollection. Nonetheless, McCracken contends that Lui should have been able to review the notes[9] and testify, based on his routine practice, that: (1) Lui would have been alarmed by Laura's rate of blood loss; and (2) Lui would have communicated that concern to McCracken during the procedure. The Superior Court excluded Lui's testimony, on the ground that "allowing [Lui] to testify would be speculative at best and inappropriate" because he does not remember the procedure.[10]

McCracken argues that evidence of Lui's routine practice is admissible under Delaware Rule of Evidence 406, which provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the

---

no plain error. *See* Appellants' Appendix at A–1559.

5. *See, e.g.,* Appellants' Appendix at A–0955–57.

6. Appellants' Appendix A–0988; *see also* A–0985, A–0997–98.

7. Appellants' Opening Brief at 29.

8. *See, e.g., Mazda Motor Corp. v. Lindahl,* 706 A.2d 526, 530 (Del.1998) (noting that this Court reviews a Superior Court ruling on a motion for judgment as a matter of law to

determine "whether the evidence and all reasonable inferences that can be drawn therefrom, taken in a light most favorable to the non-moving party, raise an issue of material fact for consideration by the jury").

9. Although the notes from surgery were mostly written by a nurse anesthetist, Lui had initialed them in multiple places.

10. *Cooney–Koss v. Barlow,* 2013 WL 1400899, at *3 (Del.Super. Feb. 28, 2013).

person or organization on a particular occasion was in conformity with the habit or routine practice.[11]

In *Brett v. Berkowitz*,[12] this Court held that "evidence presented under Rule 406 must consist of specific, 'semi-automatic' conduct that is capable of consistent repetition."[13]

Courts in other jurisdictions have allowed medical practitioners to testify about their routine practice as evidence of what the practitioners did on a particular occasion. For example, the Supreme Court of Rhode Island recently held that a plaintiff's treating physician, who had no recollection of treating the plaintiff, could testify about his practice in treating patients with similar symptoms.[14] The court noted that: (1) "[t]here is no bright-line rule about the number of times the witness must have engaged in a particular practice before evidence of habit and routine may be admitted"; (2) "the jury was permitted to accord whatever weight to this testimony the jurors deemed appropriate"; and (3) "[t]he plaintiff was free to question the reliability of this testimony and challenge the number of times defendant had treated

patients with [similar] injuries."[15] Other states have taken a similar approach.[16]

We agree that a medical practitioner should be allowed to testify as to what he or she "would have done" in cases where the conduct in question is part of the practitioner's routine conduct. Here, Lui testified during his deposition that, when he has particular concerns about a patient during a procedure, he communicates those concerns to the operating surgeon.[17] For example, when Lui was asked whether the anesthesia team communicates with the surgeon about a patient's stability, Lui answered, "[I]f we had concerns about vital signs ... we would let the surgeon know."[18] Lui also testified that he would be alarmed by a patient losing one liter of blood in a 30–minute period because it is difficult to "keep up" with a patient losing blood at that rate. He stated that he would be concerned about any patient suffering that rate of blood loss.

In sum, Lui's deposition testimony establishes that, as part of his routine practice, (1) he would have been concerned about "keeping up" with Laura's rate of

---

11. D.R.E. Rule 406.

12. 706 A.2d 509 (Del.1998).

13. *Id.* at 516–17.

14. *Dawkins v. Siwicki*, 22 A.3d 1142, 1155 (R.I.2011).

15. *Id.* at 1155–56.

16. *Jacob v. Kippax*, 10 A.3d 1159, 1160 (Me. 2011) (holding that the trial court did not abuse its discretion when it allowed the defendant oral surgeon, who lacked memory of the plaintiff patient's specific treatment, to testify as to his routine practices in his treatment of patients); *Thomas v. Hardwick*, 231 P.3d 1111, 1116–17 (Nev.2010) (allowing the treating emergency room doctor, who had no recollection of the plaintiff patient, to testify "that he routinely urges patients with chest pain complaints and inconclusive results ...

to be admitted"); *Rivera v. Anilesh*, 8 N.Y.3d 627, 838 N.Y.S.2d 478, 869 N.E.2d 654, 657–58 (2007) (permitting the treating physician to testify about his routine procedure for administering injections of anesthesia); *Palinkas v. Bennett*, 416 Mass. 273, 620 N.E.2d 775, 777–78 (1993) (holding that the trial court did not abuse its discretion when it allowed a defendant pediatrician to testify that he "followed the same routine when discharging premature infants throughout thirty years of practice as a licensed pediatrician"); *Aikman v. Kanda*, 975 A.2d 152, 163 (D.C.2009) (allowing a surgeon to testify about a component of a mitral valve operation when the surgeon established that he had performed more than 500 similar operations).

17. *See, e.g.,* Appellants' Appendix at A–0090, A–0114–15.

18. Appellants' Appendix at A–0115.

blood loss, and (2) he would have communicated that concern to McCracken. That testimony is both admissible and significant. All of the experts agreed that a hysterectomy is the appropriate procedure of last resort. The issue was whether Laura's condition had deteriorated to the point that a hysterectomy was necessary. Lui's confirmation of McCracken's concern could have been very important to the jury. For these reasons, the trial court abused its discretion by excluding Lui's limited testimony.

### III. Exclusion of Evidence About Laura's Purported Bleeding Disorder

■ On May 7, 2012, two years after the hysterectomy, a portion of Laura's colon was removed in an emergency surgery after conservative measures failed to stop bleeding from her rectum. McCracken received medical records from that surgery before trial in late June 2012 (the "May 2012 Records").[19] McCracken sought to introduce the May 2012 Records to show that Laura may have an undiagnosed bleeding disorder that is unresponsive to conservative treatments and, therefore, the May 2010 hysterectomy was inevitable. The Superior Court ruled that the May 2012 Records were too prejudicial to be introduced for that purpose absent an expert who could identify a bleeding disorder. McCracken then retained Dr. Lawrence Lessin, a hematologist, who was prepared to testify that Laura suffers from such a bleeding disorder.

In his expert report,[20] Lessin found that "[b]oth the 2010 and 2012 admissions to the hospital failed conservative treatment of hemorrhage and required removal of bleeding organs to stop life-threatening blood loss."[21] Based on the records and his medical experience, Lessin opined, "I believe that Ms. Cooney Koss suffers from an underlying bleeding disorder that predisposes her to significant risk of hemorrhage that is refractory to conservative forms of treatment."[22]

■ The Superior Court excluded Lessin's expert testimony because it was irrelevant, and because it was "too late" to introduce this evidence "less than a week before trial."[23] The timing issue is moot, given that there will be a new trial. Thus, the question is whether the trial court abused its discretion in barring this evidence as irrelevant. We conclude that it did. The bleeding disorder evidence helps prove that a hysterectomy would have been necessary no matter how many conservative options were attempted. If the jury accepted that expert opinion, it could have found that McCracken's negligence, if any, did not cause damages. In addition, the May 2012 Records, which were excluded in connection with the ruling on Lessin, would be relevant in evaluating Laura's credibility. According to the May 2012 Records, when Laura reported her medical history, she denied having acute bleeding episodes in the past. Laura's credibility may not have been directly at issue, but the plaintiff's credibility can be an important component of the jury's overall evaluation of the claim.

### IV. Exclusion of Medical Treatises on Cross-Examination

McCracken sought to impeach Spellacy, the Kosses' standard of care expert, using certain medical treatises (including literature that Spellacy had co-authored). The Superior Court excluded the medical treat-

19. Appellants' Appendix at A–1562–76.

20. Appellants' Appendix at A–0299–302.

21. Appellants' Appendix at A–301.

22. Appellants' Appendix at A–302.

23. Appellants' Appendix at A–0339–41.

ises, ruling that the parties had agreed in a pretrial stipulation [24] that all medical literature was to be disclosed before trial.[25] But the pretrial stipulation expressly allowed the impeachment evidence McCracken had proffered:

> Defendants further reserve the right to introduce rebuttal exhibits and exhibits used for impeachment purposes, including medical literature, the identity of which cannot be known until after the presentation of Plaintiffs' case at trial.[26]

The trial court made its mistake because it focused on another section of the pretrial stipulation. Since there was no other basis on which the trial court excluded the evidence, its ruling was an abuse of discretion.

### V. Rulings Significantly Prejudiced McCracken

■ We reviewed the Superior Court's evidentiary rulings under an abuse of discretion standard.[27] Having found that the trial court abused its discretion, now we must decide "whether the error[s] rise[ ] to the level of significant prejudice which would act to deny the defendant a fair trial." [28] The three rulings, together, meet this standard.

The first two rulings—the exclusion of the treating anesthesiologist's testimony, and the exclusion of evidence related to Laura's bleeding disorder—go to the heart of Laura's claim. If Lui were allowed to testify that Laura's blood loss was alarming, the jury could have concluded that McCracken's decision to perform the hys-

terectomy was not negligent. Evidence about Laura's bleeding problems, likewise, could have convinced the jury that McCracken made the right decision. Alternatively, the bleeding disorder evidence could have led the jury to find no damages, because the need for a hysterectomy was inevitable. Finally, although not as prejudicial, the exclusion of medical treatises impaired McCracken's ability to impeach Laura's only standard of care expert at trial. Because there is a real possibility that the jury would have reached a different outcome had all of this evidence been introduced, we conclude that McCracken was denied a fair trial.

### VI. Cross–Appeal Lacks Merit

■ The Kosses cross-appealed the grant of summary judgment in favor of Barlow. The trial court held that there was no expert evidence that Barlow's alleged negligence caused the hemorrhaging that led to the hysterectomy. We agree. Spellacy opined that Barlow breached the standard of care by failing to properly suture Laura's uterus after the Caesarean section. In addition, Spellacy testified that Barlow's failure to properly suture Laura's uterus resulted in a small hole and some bleeding into Laura's abdomen. But no expert, including Spellacy, testified that the suturing, the hole, or the bleeding, was causally connected to the bleeding condition that led McCracken to perform a hysterectomy. In fact, Spellacy testified to the contrary. When asked whether it was his opinion that the suturing lead to the hemorrhaging, Spellacy replied, "No. No.

---

24. Appellants' Appendix at A–0270–85.

25. The trial court did allow McCracken to ask Spellacy questions that included language from the medical treatises, but McCracken was not allowed to reveal the sources of those questions. Impeaching a witness's credibility with medical treatises is far more effective if the jury actually knows that the cross-examination questions are coming from medical

treatises. Thus, the trial court's attempted solution was unhelpful.

26. Appellants' Appendix at A–0261.

27. See, e.g., Jones v. State, 940 A.2d 1, 9 (Del.2007).

28. Manna v. State, 945 A.2d 1149, 1153 (Del. 2008).

The hemorrhage is coming from a different thing." [29]

## CONCLUSION

Based on the foregoing, the judgment of the Superior Court is hereby REVERSED and this matter is REMANDED for a new trial in accordance with this opinion. The entry of Summary Judgment in favor of Barlow is AFFIRMED.

29. *Cooney–Koss v. Barlow,* 2012 WL 4097291, at \*2 (Del.Super. Aug. 29, 2012).