IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSE MORETA, | § | |
| | § | No. 304, 2018 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1603013733 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: March 6, 2019
Decided: April 16, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

## **ORDER**

This 16th day of April, 2019, having considered the briefs and the record below, and following oral argument, it appears to the Court that:

(1) After a seven-day trial, a Superior Court jury convicted Jose Moreta of murder and related charges for his role in the shooting death of Christian Serrano and the wounding of Jerry DeLeon following a confrontation in the City of Wilmington. On appeal, Moreta argues the Superior Court erred by (a) admitting into evidence a Facebook post by his accomplice, Joshua Gonzalez, two days after the shooting, and (b) not intervening to correct the prosecutor in response to his allegedly improper statements during summation. After a careful review of the

record, we find the trial court acted within its discretion and affirm Moreta's convictions.

(2) On March 17, 2016, Moreta and Gonzalez chased Hector Guzman through the streets of Wilmington. Apparently, there was "bad blood" between Moreta and Guzman. Christian Serrano and Jerry DeLeon—who were friends of Guzman—heard about the chase, and confronted Moreta and Gonzalez. Moreta told Gonzalez to "hit" DeLeon, which testimony suggested meant "shoot him."[1] But DeLeon punched Moreta before Gonzalez acted. Moreta and Serrano then walked away. While they walked up the street, shots were fired in their direction. DeLeon was shot in the arm and Serrano was fatally shot in the head. Moreta and Gonzalez fled the scene.

(3) A Wilmington Police Officer heard the shots, spotted Moreta, and gave chase. Within minutes the police apprehended Moreta inside a house after he told the residents not to tell the police he was hiding under the bed. In the house the police also found Moreta's black hooded sweatshirt, which he was seen wearing when confronting DeLeon and Serrano. Gonzalez fled in an opposite direction and evaded arrest that day.[2] Although it was not clear from testimony whether Moreta or Gonzalez fired a gun, Moreta's right palm tested positive for gunshot residue.

---

[1] App. to Opening Br. at A59, A147 (Tr. of Trial).
[2] Wilmington Police eventually arrested Gonzalez, who was tried and convicted of murder and related charges. *State v. Gonzalez*, Super Ct. ID No. 1604016007 (Docket # 78).

2

The police also discovered a firearm in a backyard on the street where Moreta and Gonzalez fled. The gun matched one of the firearms used in the shooting. Various surveillance cameras captured the events leading up to the gunfire, although none recorded the actual shooting.

(4) Two days after the incident, Gonzalez posted on Facebook: "[f]uckin wit tha gang you'll end up ina box M.O.E.T. You know what we pop anything drop when tha bullets fly by in da hood man you better watch a lot 100 #AllBegan #MoneyGateMixTape #FreeC #FreeP."[3] Before trial, Moreta objected to admission of this post as hearsay. The Superior Court overruled the objection, stating in relevant part that:

> I am going to allow the other evidence in with respect to the text messages and the Facebook posts. There's a conspiracy and accomplice liability, so the information regarding the MOET squad. . . . But we'll have to make an instruction at the time that it's being offered not for the truth of the matter asserted but is being used for other purposes in the case. . . . I actually read one of the cases where this was discussed. I guess it's the *Williams*[4] case. The judge gave a limiting instruction almost identical, *Williams v. State*, and the judge created an instruction saying it's not being offered for the truth of the matter asserted. In *Williams v. State* I think the judge actually found the conspiracy lasting – I'm not sure it's as relevant as it is in this case, actually. In that case, there was a question of whether the conspiracy was still ongoing. Mr. Gonzalez at this point has absconded from the scene, and this is just two days later and it's still part of the whole situation that's going on in the case. So, the gun's missing at this point, still. And the State has the

---

[3] App. to Opening Br. at A152 (Tr. of Trial). The State did not attempt to interpret much of the post. Instead, the State focused on the use of similar hashtags and "M.O.E.T." to connect Gonzalez and Moreta. "#FreeP" allegedly referred to Moreta, who was incarcerated at the time of the post. *Id.* at A148.

[4] *Williams v. State¸* 494 A.2d 1237 (Del. 1985).

3

conspiracy and the accomplice liability, and that's where the relevance of this information comes from. And I do find that the relevance is not substantially outweighed by the probative value. . . . But I think it's different with the MOET squad or MOET Boys. There is conspiracy and accomplice liability. There's going to be testimony about – I can't remember the name, but Mr. Moreta is more the leader and there's an indication it's going to be related to his name. So I think, in that instance, that there's relevance and it's not substantially outweighed by the prejudicial effect. There isn't a gang charge in this case, but there is an accomplice liability and a conspiracy, and showing a connection between the two shows that they got together to come up with a course of action.[5]

The trial judge instructed the jury it could only consider the post for the limited purpose of accomplice liability and conspiracy. The Superior Court sustained defense objections to a video and picture that were deemed too prejudicial and ordered some text submissions to be partially redacted.[6]

(5) On appeal, Moreta argues that the Superior Court erred in admitting the Facebook post into evidence because it was hearsay and did not fit within the exception to hearsay for statements made by a co-conspirator in furtherance of a conspiracy.[7] According to Moreta, Gonzalez posted the text well after the crime was completed, ending the conspiracy. The State responds that the text is not hearsay and thus no exception is required for admission into evidence because the text was not used to prove the truth of the matter asserted. Instead, the State used the text to

---

[5] App. to Opening Br. at A38 (Tr. of Trial).
[6] *Id.*
[7] D.R.E. 801(d)(2)(e).

establish the connection between Moreta and Gonzalez. We review for abuse of discretion.[8]

(6) Out of court statements are hearsay if they are "offer[ed]. . . to prove the truth of the matter asserted in the statement."[9] We agree with the trial judge that the post was not offered by the State to prove the truth of the matter asserted in the post—do not mess with the M.O.E.T. group in the future or you could end up dead. Instead, the State used Gonzalez's Facebook post and an Instagram post by Moreta to respond to Moreta's claim that he was not associated with Gonzalez at the time of the shooting.[10] The two posts used the same hashtags and referred to M.O.E.T.[11] Thus, the Facebook post assisted the State in proving accomplice liability and a conspiracy. To mitigate prejudice to Moreta—where the jury might imply that Moreta and Gonzalez had shot someone recently—the court gave a limiting instruction telling jurors to confine their use of the post to accomplice liability and

---

[8] *Cooney-Koss v. Barlow*, 87 A.3d 1211, 1217 (Del. 2015). The State contends that we should review for plain error because Moreta did not fully articulate his arguments below. But the trial court specifically addressed the issue and it is therefore appropriate to review under an abuse of discretion standard.

[9] D.R.E. 801(c)(2).

[10] App. to Opening Br. at A146 (Tr. of Trial) (post is being used to establish "a link between Joshua Gonzalez and Jose Moreta…."); A153-54 (explaining how Moreta denied in police interviews he was with Gonzalez at the time of the shooting); A171 ("You heard interviews where the defendant consistently denied being with Josh [Gonzalez].").

[11] M.O.E.T. stands for "Money Over Everything," a group that included Moreta and Gonzalez. *Id.* at A148 (Tr. of Trial).

conspiracy.[12]   Thus, the Superior Court did not err by admitting Gonzalez's Facebook post.  The trial court's discussion of possible admissibility of the post as the statement of a co-conspirator under D.R.E. 801(d)(2)(e) and *Williams v. State* was not necessary to its ruling.[13]

(7)   Moreta also contends that the State's summation included three improper remarks that tainted the fairness of the trial.[14]  The prosecutor said that "it's clear that the defendant intended to kill," "it's clear, ladies and gentleman . . . that he intended to kill," and "it will become clear that the reason this happened is Jose Moreta."[15]  The State responds that the statements were tied to the evidence, and at most harmless error.

(8)   Because the issue was not raised below, we review for plain error.[16] Under plain error review "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process," and

---

[12] *Id.* at A152 (Tr. of Trial); *see Taylor v. State*, 76 A.3d 791, 802 (Del. 2013) (jurors are presumed to follow limiting instructions).

[13] We agree with the defendant that the State should not have suggested in closing that the Facebook post amounted to a confession to the shooting.  App. to Opening Br. at A171 (Tr. of Trial) ("[W]e saw the defendant's young boy take to Facebook two days after the murder, and he made a post that, 'Mess with the gang, end up in a box, MOET Boys,' bragging about what he just did for his buddy.").  But, the defense did not object to the statement, and under plain error review, this error by the State would not result in reversal.

[14] At oral argument, Moreta also argued that the State's repeated use of "we" throughout the summation were improper.  As this issue was not raised below or briefed on appeal we do not address it here.

[15] App. to Opening Br. at A170-72 (Tr. of Trial).

[16] *Small v. State*, 51 A.3d 452, 456 (Del. 2012).

the error must be "basic, serious and fundamental . . . and clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[17]

(9)     The prosecution must refrain from using language in a trial that smacks of personal opinion, superior knowledge, or vouching.   Here, however, the references were sufficiently tied to the evidence and what the State intended to prove to mitigate any prejudice and thus do not rise to the level of plain error.[18]   Further, the three comments were unlike the improper conduct called out by our Court in other cases,[19] and, taken together, do not require "reversal because they cast doubt on the integrity of the judicial process."[20]

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[17] *Id.* (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

[18] *See Morales v. State*, 133 A.3d 527, 532 (Del. 2016) (finding a statement that the defendant was "clearly guilty" was "not so clearly prejudicial as to jeopardize the fairness and integrity of the trial process" under plain error review).

[19] *See, e.g.*, *Hunter v. State*, 815 A.2d 730, 734-38 (Del. 2002) (reversing conviction when the prosecutor misrepresented the evidence, denigrated the defense counsel, vouched for a State witness, and downplayed the reasonable doubt standard).

[20] *Id.* at 733.