## COMMONWEALTH vs. DANIEL SANTOS.

Middlesex. May 8, 2009. - September 15, 2009.

Present: IRELAND, SPINA, COWIN, BOTSFORD, & GANTS, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Confrontation of witnesses, Assistance of counsel. *Evidence,* Self-defense. *Self-Defense. Constitutional Law,* Confrontation of witnesses, Assistance of counsel.

At the trial of an indictment charging murder in the first degree on a theory of deliberate premeditation, the judge, in instructing the jury on manslaughter with respect to the use of excessive force in self-defense, erroneously communicated that a finding of excessive force eliminated any consideration of self-defense, and that the jury were free to return a verdict of murder if otherwise satisfied that a murder had occurred; further, the judge erroneously presented to the jury the legal consequence of using disproportionate violence in the otherwise lawful exercise of self-defense; because the errors created a substantial likelihood of a miscarriage of justice, this court reversed the defendant's conviction. [772-777] GANTS, J., dissenting.

At a murder trial, no violation of the defendant's right of confrontation arose from the admission of a medical examiner's testimony regarding an autopsy report prepared by another medical examiner who was unavailable to testify, where the defendant agreed to the admission of such evidence, limited to the contents of the report of the other medical examiner; further, the defendant's counsel was not ineffective for agreeing that such testimony, as limited, could be received, where counsel used both the contents of the report and the witness's testimony to support the theory of defense. [777-779]

INDICTMENT found and returned in the Superior Court Department on December 9, 2002.

The case was tried before *Robert H. Bohn, Jr.,* J., and motions for a new trial and for other postjudgment relief, filed on February 13, 2008, were heard by *Diane M. Kottmyer,* J.

*Jeffrey L. Baler* for the defendant.

*Marguerite T. Grant,* Assistant District Attorney (*Kevin L. Ryle,* Assistant District Attorney, with her) for the Commonwealth.

COWIN, J. A jury in the Superior Court convicted the defendant of murder in the first degree on the theory of deliberate

premeditation. The defendant, appealing from the conviction and from the denial of his motion for a new trial, asserts that the jury instructions on voluntary manslaughter were erroneous; that admission of testimony of the medical examiner (who was not the medical examiner who performed the autopsy on the victim) violated the defendant's right of confrontation; and that it was error to deny his motion for a new trial, where, at a minimum, the motion judge[1] should have authorized funds for a ballistics expert.[2] We conclude that the trial judge's instructions on manslaughter with respect to the use of excessive force in self-defense were erroneous and that, although not objected to at trial, the error created a substantial likelihood of a miscarriage of justice. Accordingly, we reverse the conviction.[3]

1. *Background.* There was no dispute that the defendant, angered by sexual advances the victim had made to the defendant's girl friend, confronted the victim in the victim's apartment and killed him. The victim's naked body was discovered by the Lowell police on the evening of October 18, 2002, "slumped" in the bathtub, with the water running from the faucet. It did not appear to the police that there had been a struggle in the bathroom. The room was small, approximately six feet two inches by five feet eight inches, and the tub consumed about half that space; the victim and defendant weighed over 200 pounds each; and most of the items on the bathroom shelves were standing upright when the police observed the scene.

Discharged cartridge casings were found on the bathroom floor, on the bathroom shelf, and in the toilet bowl. A nine-millimeter spent projectile was located under the victim in the tub and a second bullet was found in his body during the autopsy. A State police ballistician opined that three shots were fired in the bathroom, all from the same weapon, and that the third projectile was washed down the open tub drain in the running water.

The shower curtain had three bullet holes in it, two of which

---

[1]The trial judge having died, the defendant's motion for a new trial was heard and decided by another judge.

[2]Appellate counsel's brief was supplemented by a so-called *Moffett* brief filed by the defendant himself, see *Commonwealth* v. *Moffett*, 383 Mass. 201, 207-209 (1981), and we have considered both briefs.

[3]Given our disposition of the direct appeal, the motion for a new trial is moot.

were made by the same bullet passing through a fold in the curtain. A State police chemist believed that, because these holes contained copper and lead but no gunpowder residue, they were made by a gun fired from at least three to four feet away. Bullets had struck but not penetrated the vinyl in the shower "surround" in two places; one was fifty-eight inches from the bottom of the tub and the other was twenty inches.

The Commonwealth contended that the defendant came to the apartment and shot the defenseless victim three times while the victim was in his bathtub. The defense theory was that the killing occurred in self-defense. The defendant's girl friend testified[4] that, when the defendant approached the victim, the victim "grabbed" a gun from a cupboard above the bathroom sink, the two men grappled for the weapon, and while they were fighting over it, the victim "got shot," with the defendant left holding the gun.

In his own statement to the police, repeated at trial by a police officer, the defendant stated that, when the victim reached for a gun on the shelf, he (the defendant) pushed the victim into the tub, grabbed the gun, and shot the victim. "If I didn't he would have killed me."

2. *Discussion.* a. *Erroneous jury instruction.* The defendant contends that error in the judge's instructions on excessive force in self-defense requires reversal. Trial counsel did not object to the instructions on the grounds the defendant now asserts. We therefore determine whether there was error and, if so, whether that error created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Carlino,* 429 Mass. 692, 695-696 (1999).

Before a defendant is entitled to an instruction on self-defense with a dangerous weapon likely to cause serious injury or death, there must be evidence that he had a reasonable apprehension of great bodily harm or death and a reasonable belief that no other means would suffice to prevent such harm. That is, the proper exercise of self-defense means that a person in the defendant's circumstances would reasonably believe that he was about to be attacked and that he was in immediate danger of being

---

[4]The girl friend recounted what the defendant had told her, and the testimony was admitted without objection by the Commonwealth.

killed or seriously injured, and that there was no other way to avoid the attack. A person using a dangerous weapon (or deadly force) in self-defense must also have actually believed that he was in imminent danger of serious harm or death. A person may not use force in self-defense until he has availed himself of all proper means to avoid physical combat, and must use no more force than reasonably necessary in all the circumstances. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). The defendant is entitled to an instruction on self-defense with a dangerous weapon if the evidence, from any source, would warrant a finding in his favor on that issue. *Id.* The testimony from the defendant's girl friend that the victim grabbed a gun and that the defendant struggled with the victim for the gun during which time the gun went off, together with the defendant's statement to the police that he believed the victim would kill him, was sufficient to require an instruction on self-defense with a dangerous weapon. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966).

The Commonwealth argues that, once the defendant pushed the victim into the tub and disarmed him, the naked victim "no longer presented a threat to anyone," *Commonwealth* v. *Medina*, 430 Mass. 800, 811 (2000), and that self-defense could not explain why the defendant shot the victim three times. The Commonwealth's version of events ignores the girl friend's testimony.[5] For purposes of determining whether the evidence warrants an instruction on self-defense with a dangerous weapon, we do not balance the testimony of the witnesses for each side, nor do we consider the credibility of the evidence. *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975). The evidence most favorable to the defendant is that the gun went off during a struggle, thereby entitling the defendant to a self-defense instruction.

An instruction on the use of excessive force was also appropriate. "Ordinarily the question how far a party may properly go in self defen[s]e is a question for the jury, not to be judged of very nicely, but with due regard to the infirmity of human

---

[5]The Commonwealth's assertion is that, before any shots were fired, the defendant had control of the weapon and that, therefore, the defendant was no longer acting in self-defense; he could have left the apartment and it was not necessary to shoot the victim at all, much less three times.

impulses and passions." *Commonwealth* v. *Kendrick, supra,* quoting *Monize* v. *Begaso,* 190 Mass. 87, 89 (1906). We proceed to consider whether the judge's instructions on the use of excessive force in self-defense were correct.

After explaining the right of self-defense, the judge stated:

> "[E]ven if a person is entitled to use force in self-defense, he may not use excessive force in defending himself. A person may use only such force in self-defense as appears reasonably necessary to prevent the initiation, a continuation, or the recurrence of an attack. The law does not permit retaliation, and if a person's conduct is not privileged when greater force or harsher means are used than reasonably appear to be necessary, then that person is not entitled to a defense of self-defense."

This passage effectively informed the jury that, if a defendant otherwise entitled to defend himself uses excessive force, he loses the defense of self-defense altogether. The correct rule is that a defendant who uses excessive force in self-defense is entitled to a verdict of manslaughter. Here, the instruction communicated the opposite, specifically, that a finding of excessive force eliminated any consideration of self-defense, and that the jury were free to return a verdict of murder if otherwise satisfied that a murder had occurred. Thus, we cannot discern from the verdict whether the jury returned a verdict of murder because they rejected the defendant's assertion of self-defense altogether, or because they had been led to believe that excessive force in self-defense permitted a murder finding. See *Commonwealth* v. *Kendrick, supra.*

The dissent states that the court has taken this instruction "out of context" and failed to recognize that this instruction "defined the excuse or justification of self-defense . . . , which it did correctly, and did not define the mitigating factor of excessive use of force in self-defense." See *post* at 780. The concept that the judge conveyed to the jury was that excessive force negates self-defense altogether, a proposition that is incorrect. This error could have influenced the outcome of the deliberations, particularly in conjunction with the judge's later equation of excessive force with murder. See *infra.*

Citing *Commonwealth* v. *Glacken,* 451 Mass. 163, 167 (2008),

and *Commonwealth* v. *Little*, 431 Mass. 782, 787 (2000), the dissent states that, in the event that the Commonwealth proves that the defendant used excessive force, "then the defense of self-defense fails, but the mitigating factor of use of excessive force in self-defense survives, and the jury would be warranted only to return a verdict of voluntary manslaughter, not of murder." *Post* at 781.

The *Glacken* and *Little* decisions say nothing about the defense of self-defense "failing" in these circumstances, and such a concept defies logic. The jury cannot reach the question of excessive force in self-defense unless they decide that the defendant has exercised his right of self-defense in the first place. Once the jury so decide, the existence of self-defense does not disappear from the case; the very term we have employed (excessive force *in self-defense*) demonstrates as much. What the *Glacken* and *Little* decisions stand for is the correct proposition that the use of excessive force deprives the defendant of his right to be acquitted altogether, entitling him instead to a verdict of manslaughter.

The judge's error was compounded when, later in the charge, he stated: "However, if the means used were unreasonable and clearly excessive in light of the existing circumstances or if the defendant himself became the attacker, then the defendant may be found guilty of murder." That portion of the charge was, as the dissent concedes, see *post* at 786, plainly incorrect because excessive force in self-defense requires a manslaughter conviction. The jury should have been instructed, in accordance with *Commonwealth* v. *Kendrick*, *supra* at 211, "that if the use of the [gun] by the defendant as a means of averting harm to himself was unreasonable and clearly excessive in light of the existing circumstances, they could conclude that the defendant himself became the attacker and, since death resulted from his use of excessive force, he would be guilty of manslaughter." The legal consequence of using disproportionate violence in the otherwise lawful exercise of self-defense was thus presented to the jury erroneously.

Between these two incorrect instructions, the judge did state that, "if the defendant killed the victim by virtue of the use of excessive force in self-defense, the defendant may be found

guilty of the crime of manslaughter." Unfortunately, use of the word "may" erroneously altered what was an otherwise accurate instruction. See *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 563 (2001) (permissive language should not be used where mandatory language is required). If the defendant killed the victim by the use of excessive force in self-defense, the defendant *must* be found guilty of manslaughter; the jury cannot be given the option of considering that a murder has been committed. In any event, even had this instruction been correct, it was "sandwiched" between two incorrect instructions, see *id.* at 562, rendering the "center of gravity of the . . . instructions . . . strongly on the side of misstatement." *Commonwealth* v. *Acevedo*, 427 Mass. 714, 717 (1998).

The dissent disagrees that the judge should not have used the word "may," and believes that any harm that word might have caused was dissipated by the judge's later general instruction, at the behest of defense counsel, that "he did not mean to compel them to make any finding on any issue." See *post* at 785-786. The judge failed to make clear to the jury, however, that murder was unavailable.

Because the defendant did not object to the erroneous instructions at trial, we consider whether the errors created a substantial likelihood of a miscarriage of justice. Self-defense and excessive force in self-defense were obvious issues in the case; the evidence required that those issues be submitted to the jury; and the judge instructed on the issues, although incorrectly in some respects. The evidence warranted a finding of excessive force in self-defense, and if the jury so found, the defendant was entitled to a verdict of manslaughter. There can be no doubt of a miscarriage of justice if a defendant guilty of manslaughter is serving the penalty for murder. See *Commonwealth* v. *Richards*, 384 Mass. 396, 405 (1981).

The dissent seeks to avoid this conclusion by stating that the jury could not have found in the defendant's favor on the threshold facts, and that therefore errors in the instructions were inconsequential. See *post* at 786-787. The dissent reaches this conclusion by examining each of three different versions of the event[6] independently, and then arguing that each version inexor-

---

[6] The versions are those contained in the defendant's statement to the police,

ably leads to a result inconsistent with a finding of excessive force in self-defense. *Id.* Passing the fact that the argument discusses the weight of the evidence (not this court's function), the contention assumes that the jury could only have adopted or rejected one of the three versions in its entirety. This is not the case. The jury are entitled to pick and choose among conflicting versions, accepting or rejecting all or portions of the testimony as they see fit. *Koonce* v. *Commonwealth*, 412 Mass. 71, 75 (1992). We do not attempt to penetrate the jury's thought process. *Commonwealth* v. *Kincaid*, 444 Mass. 381, 391 (2005). We know only that the jury permissibly could have found that the victim died as the result of excessive force in self-defense, and that they were told that such a finding allowed a verdict of murder.

For the reasons stated, the conviction must be reversed. Our decision makes it unnecessary to consider the defendant's remaining contentions with respect to the instructions. We turn to a discussion of other issues that may arise at a retrial.

b. *Medical examiner testimony.* The defendant argues on appeal that his right of confrontation secured by the Sixth Amendment to the Federal Constitution and art. 12 of the Massachusetts Declaration of Rights was violated by the admission of Dr. Richard Evans's testimony regarding the autopsy findings of another medical examiner, Dr. Alexander M. Chirkov. In other words, he contends that, to the extent that Dr. Evans's testimony reflected written statements of Dr. Chirkov, the defendant was deprived of the opportunity to cross-examine the witness who was actually providing substantive testimonial information. In a related argument, he states that counsel was ineffective in failing to object to the testimony of Dr. Evans.

Prior to trial, the Commonwealth informed the defendant that Dr. Chirkov, the medical examiner who had performed the autopsy, had left the medical examiner's office and that another medical examiner, Dr. Evans, was prepared to testify to the contents of Dr. Chirkov's report. Claiming that the case of *Crawford* v. *Washington*, 541 U.S. 36 (2004), barred Dr. Evans from testifying in this manner, defense counsel filed a motion in limine to exclude that testimony. The judge denied the motion

his girl friend's statement to the police together with her grand jury and direct testimony, and his girl friend's testimony on cross-examination.

in limine. Before calling Dr. Evans, however, the Commonwealth agreed that the doctor would limit his testimony to the contents of Dr. Chirkov's report. Despite the fact that a *Crawford* issue, if any, had not been removed, defense counsel indicated his consent with this limitation, and agreed that Dr. Evans could testify in place of Dr. Chirkov. Given the defendant's agreement, there was no error in admitting the testimony.

On appeal, the defendant reasserts his argument that the *Crawford* decision prohibited the testimony of Dr. Evans, and argues that his trial counsel was therefore ineffective for agreeing that such testimony could be received. "In evaluating a claim of ineffective assistance of counsel in a case of murder in the first degree, we begin by determining whether there was a serious failure by trial counsel." *Commonwealth* v. *Harbin*, 435 Mass. 654, 656 (2002). Serious failure of counsel means "serious incompetency, inefficiency, or inattention of counsel — behavior falling measurably below that which might be expected from an ordinary, fallible lawyer." *Commonwealth* v. *Shuman*, 445 Mass. 268, 276 (2005), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). A tactical decision by trial counsel is considered ineffective assistance only if such a decision was manifestly unreasonable when made. *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1988). If there is such a failure by counsel, we must resolve "whether counsel's failure gives rise to a substantial likelihood of a miscarriage of justice, i.e., whether it was 'likely to have influenced the jury's conclusion.' *Commonwealth* v. *Mitchell*, 428 Mass. 852, 854 (1999), quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992)." *Commonwealth* v. *Diaz*, 448 Mass. 286, 289 (2007).

We conclude that defense counsel's choice to permit the introduction of Dr. Evans's testimony, if limited to the report of Dr. Chirkov, was hardly unreasonable, see *Commonwealth* v. *Saferian, supra*. The defense used Dr. Chirkov's material, as well as Dr. Evans's testimony, to support its self-defense theory. To document the nature of the injuries to the victim, the defendant introduced the diagram prepared by Dr. Chirkov and explained by Dr. Evans. Then, in his closing argument, defense counsel relied on Dr. Evans's testimony admitting that he could not say what position the victim was in when he was shot, as well as

the report and chart of Dr. Chirkov regarding the location of the wounds to argue that the victim was standing and within reach of the gun when he was shot. Thus, "the defense . . . depended on getting at least some of [Dr. Chirkov's] findings before the jury." *Commonwealth* v. *Nardi*, 452 Mass. 379, 395 (2008).

Although the issue whether one medical examiner may testify about the facts contained in an autopsy report prepared by another may arise at a retrial, it is unnecessary for us to rule on such question. The issue may arise in a different form at retrial; in any event, to the extent the issue is a live one at retrial, the judge and the parties may seek guidance from *Commonwealth* v. *Avila, ante* 744, 759-765 (2009); and *Commonwealth* v. *Hensley, ante* 721, 731-734 (2009).[7]

*Judgment reversed.*

GANTS, J. (dissenting). The court's reversal of the defendant's conviction of murder in the first degree on the theory of deliberate premeditation is premised on the finding that the trial judge made three errors in his final instructions to the jury, none of which was objected to at trial, that created a substantial likelihood of a miscarriage of justice. I respectfully dissent. Two of the purported errors in instruction were not errors at all. The third, while error, when appraised realistically in view of the totality of the instructions, the circumstances of this case, and the overwhelming evidence of guilt, does not create a substantial likelihood of a miscarriage of justice.

1. *The first purported error.* The court finds that the following instruction was error:

> "[E]ven if a person is entitled to use force in self-defense, he may not use excessive force in defending himself. A person may use only such force in self-defense as appears reasonably necessary to prevent the initiation, a continuation, or the recurrence of an attack. The law does not permit retaliation, and if a person's conduct is not privileged

---

[7]The final issue raised by the defendant, i.e., denial of his posttrial motion for funds for an expert ballistician, is now moot. In the event of a retrial, the matter of funds for experts most likely will be resolved pretrial.

when greater force or harsher means are used than reasonably appear to be necessary, then that person is not entitled to a defense of self-defense."

The court declares that this passage was error because it "effectively informed the jury that, if a defendant otherwise entitled to defend himself uses excessive force, he loses the defense of self-defense altogether. The correct rule is that a defendant who uses excessive force in self-defense is entitled to a verdict of manslaughter." *Ante* at 774. In so finding, the court takes this instruction out of context, and fails to recognize that the judge declared that this instruction defined the excuse or justification of self-defense (commonly called the defense of self-defense), which he did correctly, and did not define the mitigating factor of excessive use of force in self-defense. See *Commonwealth* v. *Richardson*, 429 Mass. 182, 185 (1999), quoting *Commonwealth* v. *Raymond*, 424 Mass. 382, 386 (1997) (we must "look to the charge as a whole to determine whether it fairly instructs the jury").

The defense of self-defense is related to, but separate and distinct from, the mitigating factor of excessive use of force in self-defense. See *Commonwealth* v. *Williams*, 450 Mass. 879, 885 n.2 (2008); *Commonwealth* v. *Pring-Wilson*, 448 Mass. 718, 733 & n.15 (2007). A defendant who used a deadly weapon is entitled to an instruction on the defense of self-defense only if there is "evidence warranting at least a reasonable doubt that the defendant (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Burbank*, 388 Mass. 789, 794 (1983), quoting *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). Unless there is evidence supporting all three of these elements of self-defense, the defendant is not entitled to a self-defense instruction. If there is evidence supporting each element, the Commonwealth bears the burden of proving beyond a reasonable doubt the negation of at least one of these elements, that is, it must prove "at least one of the

following propositions beyond a reasonable doubt: (1) the defendant did not have a reasonable ground to believe, and did not believe, that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force; or (2) the defendant had not availed himself of all proper means to avoid physical combat before resorting to the use of deadly force; or (3) the defendant used more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Glacken*, 451 Mass. 163, 167 (2008). See *Commonwealth* v. *Souza*, 428 Mass. 478, 486 (1998), quoting *Commonwealth* v. *Torres*, 420 Mass. 479, 492 (1995). If the Commonwealth proves any of these propositions beyond a reasonable doubt, the defendant's use of deadly force was not excused or justified by self-defense, and the defendant may be convicted based on his use of deadly force.

However, in a homicide case, if the Commonwealth fails to prove the first or second proposition, but does prove the third, that is, does prove beyond a reasonable doubt that in his exercise of self-defense the defendant used excessive force, then the defense of self-defense fails, but the mitigating factor of use of excessive force in self-defense survives, and the jury would be warranted only to return a verdict of voluntary manslaughter, not of murder. *Commonwealth* v. *Glacken*, *supra*. See *Commonwealth* v. *Little*, 431 Mass. 782, 787 (2000). Therefore, the mitigating factor of excessive use of force in self-defense justifies a conviction of voluntary manslaughter only when there is evidence sufficient to raise a reasonable doubt that the defendant (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, *and* (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force. In other words, the mitigating factor of excessive use of force in self-defense warrants a manslaughter conviction only when there is a reasonable doubt whether the defendant was entitled to use *some* force in self-defense.[1]

Here, the judge discussed the defense of self-defense in

[1]The court confuses the right of self-defense, which provides a lawful excuse or justification for the use of deadly force, with the mitigating factor

discussing the first required element of murder in the first degree (that the defendant committed an unlawful killing), telling the jury that an unlawful killing is a killing done without justification or excuse, and that a killing may be justified or excused if done in self-defense. In doing so, he followed our Model Jury Instructions on Homicide, which suggest that the jury be instructed on the defense of self-defense in discussing the first element of an unlawful killing. See Model Jury Instructions on Homicide 8 (1999); *Commonwealth* v. *Williams, supra* at 883 (judge's instructions first discussing self-defense "in defining the first element of murder in the first degree, an unlawful killing," were based on Model Jury Instructions on Homicide).[2]

In discussing the justification or excuse of self-defense, the judge correctly instructed the jury about the defendant's obligation to avail himself of all proper means to avoid physical combat before resorting to the use of force, telling them:

> "[T]he right of self-defense is not available to a person unless and until he has availed himself of all proper means to avoid physical . . . combat. The right of self-defense arises from necessity and ends when the necessity ends. It exists only concurrently with the danger. All means of

---

of excessive use of force in self-defense, which is an unlawful exercise of self-defense that serves only to mitigate, not excuse, the homicide. See *Commonwealth* v. *Williams,* 450 Mass. 879, 885 n.2 (2008); *Commonwealth* v. *Pring-Wilson,* 448 Mass. 718, 733 & n.15 (2007). Indeed, the court declares, "The jury cannot reach the question of excessive force in self-defense unless they decide that the defendant has exercised his right of self-defense in the first place." *Ante* at 775. If the jury finds a reasonable doubt whether the defendant exercised his lawful right of self-defense, they must acquit the defendant. See *Commonwealth* v. *Williams, supra.* There is, however, no lawful right to use "more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Glacken,* 451 Mass. 163, 167 (2008). We permit a conviction of manslaughter based on the use of excessive force only when the jury find beyond a reasonable doubt that the defendant did *not* exercise his lawful right of self-defense but find that there *is* a reasonable doubt whether the defendant was entitled to use some force in self-defense, albeit less than he actually used.

[2]The court declares, "The concept that the judge conveyed to the jury [in this instruction] was that excessive force negates self-defense altogether, a proposition that is incorrect." *Ante* at 774. The use of excessive force in self-defense *does* negate the excuse or justification (i.e., the defense) of self-defense, which is what the judge, in keeping with our Model Jury Instructions on Homicide, was discussing in this instruction.

avoiding physical combat must be exhausted, including the use of any avenue of escape . . . ."[3]

The judge also correctly instructed that the defendant loses the excuse of self-defense if he uses excessive force, saying:

> "[E]ven if a person is entitled to use force in self-defense, he may not use excessive force in defending himself. A person may use only such force in self-defense as appears reasonably necessary to prevent the initiation, the continuation, or the recurrence of an attack. The law does not permit retaliation, and a person's conduct is not privileged when greater force or harsher means are used than reasonably appear to be or are in fact necessary. That is, even if . . . the right of self-defense is available to a person, and even if a person is entitled to use force in self-defense, if excessive force is used and death results, then the person using such excessive force has committed an unlawful killing."

The only error the judge made in instructing as to the defense of self-defense favored the defendant. The judge gave the more generous self-defense instruction appropriate for nondeadly force, declaring that "[t]he right of self-defense is available to a person when he is or reasonably believes that he is about to be physically assaulted by the victim." As noted earlier, the judge should have limited the right of self-defense in this case to a person who had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force. See *Commonwealth* v. *Glacken*, 451 Mass. 163, 167 (2008).

Consequently, the judge did not err in instructing the jury as to the defense of self-defense except to provide the jury with the more generous instruction appropriate to the use of nondeadly force in self-defense. The court's finding of error apparently suggests that the judge, after discussing the defense of

---

[3]Although the shooting here occurred in a dwelling, the defendant was not the occupant of that dwelling, so the statutory abolition of the duty to retreat from one's dwelling before using deadly force in self-defense did not apply. G. L. c. 278, § 8A.

self-defense in the context of discussing whether the Commonwealth has proved the first required element of murder in the first degree (that the defendant committed an unlawful killing), must immediately discuss the mitigating factors that could lead to a conviction of manslaughter before moving to the second required element of malice or the third required element of deliberate premeditation. This is contrary to the sequence of instruction in our own Model Jury Instructions on Homicide.

The judge, in keeping with the sequence of instruction in our Model Jury Instructions on Homicide, began his instructions to the jury by explaining that he would first discuss murder in the first degree, then murder in the second degree, and then manslaughter, describing manslaughter as "a lesser included offense within the offense of murder." In discussing the law of murder in the first and second degree, he explained that, for the jury to find the defendant guilty of either of these crimes, the Commonwealth needed to prove each of the required elements beyond a reasonable doubt, including the required element of malice. When he began to discuss manslaughter, he explained that, while murder (either in the first degree or second degree) requires proof of malice, manslaughter does not. He told the jury that "the crime of manslaughter involves certain mitigating circumstances which I will outline to you" that, when found, "operate to negate the element of malice." After again telling the jury that, "if the Commonwealth fails to prove malice, then you must find this defendant not guilty of either first degree murder or second degree murder," he said, "If such mitigating circumstances are present, the law provides that even though the defendant has committed an unlawful killing, the crime is that of manslaughter and not of murder." He then described the mitigating factors of heat of passion on reasonable provocation, heat of passion induced by sudden combat, and the use of excessive force in self-defense.

Because the judge's instructions as to the defense of self-defense were furnished in discussing the required element of an unlawful killing for murder in the first and second degree, not in discussing the mitigating factors that may lead to a verdict of manslaughter, a reasonable jury would have understood that he was describing the defense of self-defense, not the mitigating

factor of excessive use of force in self-defense. As an instruction regarding the defense of self-defense, the only error the judge committed favored the defendant.

2. *The second purported error.* The court concludes that the judge also erred when he stated that, "if the defendant killed the victim by virtue of the use of excessive force in self-defense, the defendant *may* be found guilty of the crime of manslaughter" (emphasis added). *Ante* at 775-776. The court declares that the "use of the word 'may' erroneously altered what was an otherwise accurate instruction." *Id.* at 776. The court added, "If the defendant killed the victim by the use of excessive force in self-defense, the defendant *must* be found guilty of manslaughter; the jury cannot be given the option of considering that a murder has been committed" (emphasis added). *Id.* at 776.

Our Model Jury Instructions on Homicide do not compel a jury to convict of manslaughter in these circumstances by using the word "will" or "shall." Instead, our instructions call for the jury to be told in these circumstances that "you must not find the defendant guilty of murder" and "you *would be justified* in finding the defendant guilty of voluntary manslaughter" (emphasis added). Model Jury Instructions on Homicide 30.

The court also neglects to address the fact that, at trial, defense counsel objected to the judge's direction to the jury that, if they find the necessary elements, they "will" find the defendant guilty. Trial counsel told the judge, "[I]t should be permissive and not mandatory. That should be 'may' as opposed to 'shall.' " The judge then acted on this objection and told the jury that they "may, if [they] choose," find the defendant guilty of murder in the first degree or murder in the second degree, and that he did not mean to compel them to make any finding on any issue. In view of this instruction, considered with the totality of the instructions, the jury could not reasonably have understood the judge's use of the word "may" to mean that they could find the defendant guilty of murder in the first degree even if they found that the Commonwealth had failed to prove the absence of mitigating factors beyond a reasonable doubt. See *Commonwealth* v. *Torres*, 420 Mass. 479, 492 (1995). Rather, the jury would have understood the word "may" to mean that they were not compelled to find the defendant guilty even if they found that the Commonwealth

had proved each of the required elements beyond a reasonable doubt, that is, that they retained the power of jury nullification. The defendant affirmatively sought this instruction and cannot justly claim on appeal to have been prejudiced by it.

3. *The third error.* The court is correct that the judge did err in his manslaughter instruction when he discussed the mitigating factor of excessive use of force in self-defense. After correctly instructing about the mitigating factors of heat of passion induced by reasonable provocation or sudden combat, and correctly telling the jury that, "if the defendant killed the victim by virtue of the excessive force in self-defense, the defendant may be found guilty of the crime of manslaughter," the judge told the jury:

> "If you find that the victim initiated the assault such that the defendant in fact reasonably feared that he was in danger of being killed or of suffering grievous bodily harm at the hands of the victim, then the defendant had the initial right to use whatever means that were reasonably necessary to overcome the threatened harm. *However, if the means used were unreasonable and clearly excessive in light of the existing circumstances or if the defendant himself becomes the attacker, then the defendant may be found guilty of murder"* (emphasis added).

I agree that the emphasized sentence was error; if the jury found that the defendant used excessive force in self-defense, they should have found the defendant guilty of voluntary manslaughter, not murder. I disagree, however, with the court's conclusion that there was a substantial likelihood of a miscarriage of justice arising from this error.

The only evidence that could possibly have supported a finding of reasonable doubt whether the defendant used excessive force in self-defense came from the defendant's three differing versions of how the shooting occurred: (1) the version he told the New York City police department following his arrest; (2) the version he told his girl friend the night of the shooting, which she told the police, the grand jury, and the trial jury during her direct examination; and (3) the version the girl friend testified to on cross-examination at trial, in answer to leading questions posed by defense counsel.

As stated earlier, the mitigating factor of excessive use of force in self-defense may warrant a manslaughter conviction only if there is a reasonable doubt whether the defendant was entitled to use *some* force in self-defense. If the jury had credited the first version (the defendant grabbed the gun from the victim, pushed him into the bathtub, and started firing), the defendant would not be entitled to use *any* force in self-defense after he had grabbed the gun and pushed the defendant into the bathtub, because he then easily could have retreated from the house without engaging in any more violence. See *Commonwealth* v. *Medina*, 430 Mass. 800, 811 (2000). Moreover, if the jury had a reasonable doubt about this version of events, they would have found the defendant guilty of voluntary manslaughter notwithstanding the erroneous instruction, because the victim's grabbing for the gun would have been sufficient to raise a reasonable doubt as to the mitigating factors of reasonable provocation and sudden combat, as to which the jury were correctly instructed.

If the jury had credited the defendant's statement to his girl friend on the night of the shooting, as described in her direct examination (the defendant told her that he had been at the victim's home, the victim had called him to the bathroom, they started arguing, and the argument reached the point that he shot the victim), the defendant would not have been entitled to *any* instruction as to *any* mitigating factor, because he told her simply that he shot the victim during an argument. "Mere words, no matter how insulting or abusive, standing alone do not constitute reasonable provocation." Model Jury Instructions on Homicide 28. See *Commonwealth* v. *Burgess*, 450 Mass. 422, 438 (2008).

If the jury had a reasonable doubt as to the credibility of the defendant's statement to his girl friend, as described by her through leading questions on cross-examination (the gunshots were fired during the defendant's struggle with the victim for the gun), the jury would have found the defendant not guilty of any crime because the Commonwealth would not have met its burden of proving beyond a reasonable doubt that the killing was not excused by the defense of self-defense. Consequently, there is no scenario arising from the evidence at trial in which the judge's error could have affected the jury's verdict.[4]

---

[4]The court correctly observes that the jury were entitled to "pick and

Moreover, the physical evidence in this case overwhelmingly contradicted the defendant's claim that he acted in self-defense. The defendant said the victim was on the toilet when he first confronted him, but the toilet seat was up, there was no urine or excrement in the toilet, and the bathtub faucet was running when the police arrived. The defendant did not tell anyone that he lifted the toilet seat, flushed the toilet, or turned on the bathtub faucet before he left, nor is it plausible that he did. The defendant said that the victim first grabbed the gun, and he took it from him, but there was no sign of a struggle, especially a life-or-death struggle, in a very small bathroom occupied by two large men; even the half-empty toilet paper roll on the shelf above the toilet and the liquid soap container on the sink were still standing when the police arrived. The defendant said that the victim fell into the bathtub during the struggle, but the victim was found lying on his back in the bathtub, with his knees bent and a bucket at his feet near the tub faucet, hardly the position one would expect based on any of the defendant's versions. Two of the three bullets fired had passed through the shower curtain, which meant that the victim was on the other side of the shower curtain from the gun when at least two of the shots were fired. When considered in the context of the entire charge and the overwhelming weight of the evidence at trial, the judge's erroneous instruction on the excessive use of force in self-defense did not create a substantial likelihood of a miscarriage of justice.[5]

---

choose among conflicting versions, accepting or rejecting all or portions of the testimony as they see fit." *Ante* at 777. Yet, the court does not explain how the judge's error could have affected the jury's verdict under *any* variation of these conflicting versions that were supported by the evidence.

[5]The court states that it is "not this court's function" to discuss the weight of the evidence in determining whether an error in a jury instruction creates a substantial likelihood of a miscarriage of justice. *Ante* at 777. To the contrary, it is plainly appropriate to consider the weight of the evidence in making this determination. "In deciding, under G. L. c. 278, § 33E, whether an error in a jury instruction created a substantial likelihood of a miscarriage of justice, a new trial is called for unless we are substantially confident that, if the error had not been made, the jury verdict would have been the same." *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998). In determining whether "we are substantially confident that . . . the jury verdict would have been the same" despite the erroneous instruction, we often need to consider the weight of the evidence and routinely have done so. See, e.g., *Commonwealth* v. *Williams*, 450 Mass. 879, 885 n.4 (2008) (omissions from model jury instructions did

4. *Conclusion.* If I thought there was any significant possibility that the judge's lone error of instruction could have affected the jury's verdict, I would join the court's decision to vacate the conviction and order a new trial. Because I conclude there was no such significant possibility, I dissent.

---

not create substantial likelihood of miscarriage of justice in view of "overwhelming evidence of excessive force presented at trial"); *Commonwealth* v. *Oliveira*, 445 Mass. 837, 845 (2006) (finding that erroneous instruction about malice did not present substantial likelihood of miscarriage of justice because "evidence that the defendant acted with malice is overwhelming"); *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995) (errors as to third prong malice instruction were "irrelevant" because "evidence supporting their finding of malice under the first prong is overwhelming"); *Commonwealth* v. *Garcia*, 379 Mass. 422, 442 (1980) (erroneous instruction on reasonable doubt in murder case harmless because "case involves overwhelming evidence of guilt").