NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12145

COMMONWEALTH  vs.  GEORGE ORTEGA.


Suffolk.     February 9, 2018. - September 17, 2018.

Present: Gants, C.J., Lowy, Cypher, & Kafker, JJ.


Homicide. Constitutional Law, Jury. Jury and Jurors. Practice, Criminal, Jury and jurors, Empanelment of jury, Challenge to jurors, Instructions to jury, Request for jury instructions. Self-Defense.


Indictments found and returned in the Superior Court Department on October 31, 2012.

The cases were tried before Linda E. Giles, J.


Robert L. Sheketoff for the defendant.
Julianne Campbell, Assistant District Attorney (Ian Polumbaum, Assistant District Attorney, also present) for the Commonwealth.


LOWY, J.  A Superior Court jury convicted the defendant, George Ortega, of murder in the first degree on the theory of deliberate premeditation for the shooting death of Steven

Fuentes on May 24, 2012.[1,2]  The shooting was precipitated by a drug turf war.  After the close of all the evidence, the defendant requested that the jury be instructed on self-defense and voluntary manslaughter.  The request was denied, and the jury were instructed as to the prerequisites for a guilty finding of murder in the first degree and murder in the second degree.

On appeal, the defendant argues that the judge abused her discretion by declining to require the prosecutor to explain his peremptory challenge to a female African-American member of the venire.  The defendant also argues that the judge erred by declining to instruct the jury on self-defense and voluntary manslaughter.  For the reasons discussed below, we conclude that the judge erred by declining to require an explanation for the prosecutor's peremptory challenge.  We also conclude that the judge erred in declining to give the defendant's requested jury instructions on self-defense and voluntary manslaughter.  Accordingly, we vacate the defendant's convictions.

---

[1] The defendant was also convicted of carrying a firearm without a license.

[2] A codefendant, Anthony King Solomon, was acquitted of murder in the first degree, as a participant in a joint venture, and of carrying a firearm without a license.

1.  Peremptory challenge of juror no. 78.  a.  Background.[3] The defendant contends that the judge abused her discretion by declining to require the prosecutor to provide an adequate and genuine race-neutral reason for his peremptory challenge to juror no. 78, a female African-American member of the venire. See Commonwealth v. Lopes, 478 Mass. 593, 596 (2018); Commonwealth v. Soares, 377 Mass. 461, 486-488, cert. denied, 444 U.S. 881 (1979).[4]  To provide context for addressing this claim, we begin by summarizing the relevant factual background.

After directing a series of questions to the jury venire as a group and through a written questionnaire, the judge conducted an individual voir dire of the prospective jurors.  The judge then allowed counsel the opportunity to question the prospective jurors, and the judge required counsel to raise any peremptory challenge to a prospective juror immediately after the judge completed her questioning.

---

[3] This section provides information relevant to the peremptory challenge issue.  Further factual details are recited in the context of the alleged errors about which the defendant complains.

[4] The defendant also argues that the judge erred in declining to allow his exercise of a peremptory strike to juror no. 105, a Caucasian member of the venire who is an accountant. See Commonwealth v. Prunty, 462 Mass. 295, 310 n.22 (2012). Because we conclude that the judge abused her discretion by failing to require an explanation for the prosecutor's peremptory challenge of juror no. 78, we do not reach this issue.

The defendant raised his first race-based Soares challenge when he objected to the prosecutor's use of his second peremptory challenge to strike juror no. 26, a male African-American member of the venire. The judge determined that the defendant had made a prima facie showing of improper use of the peremptory strike, and required the prosecutor to provide an adequate gender- and race-neutral reason for his decision to strike. The judge initially denied the prosecutor's request to strike juror no. 26, explaining that the prosecutor's proffered explanation -- concerns related to juror no. 26's health -- were inadequate. The prosecutor later sought to exercise his second peremptory challenge to strike juror no. 26 based on that juror's failure to accurately disclose his criminal history on his jury questionnaire.[5] The judge allowed the prosecutor's request, and juror no. 51, a male African-American member of the venire, replaced juror no. 26 without objection.[6]

---

[5] In Commonwealth v. Cousin, 449 Mass. 809, 818, 822 (2007), cert. denied, 553 U.S. 1007 (2008), and Commonwealth v. Hampton, 457 Mass. 152, 171 (2010), we held that a prosecutor has independent authority to conduct checks of jurors' criminal offender record information (CORI) records pursuant to G. L. c. 6, § 172, before the jury are sworn. Here, the prosecutor had alerted the judge in advance of jury selection that he would be checking selected jurors' CORI records and providing such records to all counsel.

[6] Similar to juror no. 26, juror no. 51's CORI records indicated that he had failed to disclose his criminal history on his jury questionnaire. The judge allowed the prosecutor's

The defendant asserted his next race-based Soares challenge to the prosecutor's fifth peremptory challenge to strike juror no. 78, a female African-American member of the venire. At that point, one female African-American had been seated, and the prosecutor had used two of his four peremptory strikes against male African-American prospective jurors. Although the judge had already found a Soares pattern of excluding prospective African-American jurors because of race, the judge found that the defendant had not met his prima facie burden, explaining that there was already one "female of color on th[e] jury."

b. Discussion. "The use of peremptory challenges to exclude prospective jurors solely because of bias presumed to derive from their membership in discrete community groups is prohibited both by art. 12 [of the Massachusetts Declaration of Rights], see [Soares, 377 Mass. at 486-488], and the equal protection clause [of the Fourteenth Amendment to the United States Constitution], see Batson v. Kentucky, 476 U.S. 79, 84-88 (1986)." Commonwealth v. Harris, 409 Mass. 461, 464 (1991). Unlike its Federal counterpart, art. 12 prohibits bias in jury selection not only based on race or gender independently, but also based on a combination thereof. See Commonwealth v. Jordan, 439 Mass. 47, 62 (2003) (purposeful exclusion based on

---

subsequent request to exercise his fourth peremptory strike to excuse juror no. 51.

intersectional status in group defined by race and gender prohibited). See also Commonwealth v. Robertson, 480 Mass. 383, 397 (2018). There is a presumption that the exercise of a peremptory challenge is proper. See Commonwealth v. Issa, 466 Mass. 1, 8 (2013). "That presumption may be rebutted, however, if it is shown that (1) there is a pattern of excluding members of a discrete group; and (2) it is likely that individuals are being excluded solely because of their membership in this group." Commonwealth v. Benoit, 452 Mass. 212, 218 (2008), citing Commonwealth v. Curtiss, 424 Mass. 78, 80 (1997).

"A challenge to a peremptory strike, whether framed under State or Federal law, is evaluated using a burden-shifting analysis." Commonwealth v. Jones, 477 Mass. 307, 319 (2017). In the first stage, "the burden is on the party challenging the peremptory strike to make a prima facie showing that the strike is improper. If the party does so, the burden shifts to the party attempting to strike the prospective juror to provide a group-neutral reason for doing so." Id.

Establishing a prima facie case of discrimination "is not an onerous task." Jones, 477 Mass. at 321. See Commonwealth v. Maldonado, 439 Mass. 460, 463 n.4 (2003). In determining whether a pattern exists, a trial judge is to consider all of the relevant facts and circumstances including (1) "the number and percentage of group members who have been excluded"; (2)

"the possibility of an objective group-neutral explanation for the strike"; (3) "any similarities between excluded jurors and those, not members of the allegedly targeted group, who have been struck"; (4) "differences among the various members of the allegedly targeted group who were struck"; (5) "whether those excluded are members of the same protected group as the defendant or the victim"; and (6) "the composition of the jurors already seated." Jones, supra at 322, citing Issa, 466 Mass. at 9, 10-11.[7]  A single peremptory challenge may be sufficient to make a prima facie showing that rebuts the presumption of proper use.  See Issa, supra at 9; Commonwealth v. Fryar, 414 Mass. 732, 738 (1993), S.C., 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997) ("challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety").  We review the judge's decision on the peremptory challenge for an abuse of discretion.  Jones, supra at 319-320, citing Issa, supra at 10.

Similar to the judge's decision in the case underlying Jones, 477 Mass. at 325, the judge in this case relied exclusively on the presence of a single female African-American

---

[7] "This list of factors is neither mandatory nor exhaustive; a trial judge and a reviewing court must consider 'all relevant circumstances' for each challenged strike." Commonwealth v. Jones, 477 Mass. 307, 322 n.24 (2017), quoting Batson v. Kentucky, 476 U.S. 79, 96 (1986).  See Commonwealth v. Robertson, 480 Mass. 383, 397 (2018).

who at that point had been seated in concluding that the defendant had not met his prima facie burden.[8]  Specifically, the judge explained that the prosecutor was entitled to exercise the peremptory strike because there was already one woman of color on the jury.  While the composition of seated jurors provides a prism through which to determine discriminatory intent, "that is only one factor among many, and must be assessed in context."  Id.  "The presence of one empanelled African-American juror . . . cannot be dispositive."  Id.  See Sanchez v. Roden, 753 F.3d 279, 302-303 (1st Cir. 2014).  "[T]o place undue weight on this factor not only would run counter to the mandate to consider all relevant circumstances, see Batson, 476 U.S. at 96-97, but also would send the 'unmistakable message that a prosecutor can get away with discriminating against some African-Americans . . . so long as a prosecutor does not discriminate against all such individuals'" (emphasis added).  Jones, supra, quoting Sanchez, supra at 299 (that five African-

_____

    [8] The Commonwealth argues that, at the time of the prosecutor's peremptory challenge to strike juror no. 78, two of the six seated jurors "were women of color."  We have previously noted that "[t]he test in Soares and Batson does not apply to challenges to members of all minority ethnic or racial groups lumped together, but instead applies to challenges to 'particular, defined groupings in the community.'"  Prunty, 462 Mass. at 307 n.17, quoting Commonwealth v. Soares, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979).  See Gray v. Brady, 592 F.3d 296, 305-306 (1st Cir.), cert. denied, 561 U.S. 1015 (2010) (explaining that African-American and Hispanic jurors are not part of same "cognizable group" for Batson purposes).

Americans had already been seated not, by itself, dispositive).

Because the judge only considered the composition of the

empanelled members of the jury, thereby placing undue weight on

one of six relevant factors, we conclude that the judge abused

her discretion in finding that the defendant had fallen short of

making a prima facie showing of discrimination.[9]  Accordingly,

the defendant's convictions must be reversed.  See Jones, supra

at 325-326.[10]

2.  Failure to instruct on self-defense and voluntary

manslaughter.  a.  Background.  The defendant argues that the

judge erred in declining to give his tendered jury instructions

on self-defense and voluntary manslaughter.  Although the jury

heard conflicting testimony from various witnesses, we view the

evidence in the light most favorable to the defendant to

determine if any view of the evidence would support jury

---

[9] Where a judge has already found a prima facie showing of excluding prospective jurors based on race, gender, or membership in some other protected class, the judge should carefully scrutinize subsequent challenges to the use of peremptory strikes as to another juror in the same protected class.  "[W]here a judge abuses his or her discretion by failing to find a prima facie case, the error is unlikely to be harmless."  Commonwealth v. Issa, 466 Mass. 1, 11 n.14 (2013).  We therefore again "urge judges to think long and hard before they decide to require no explanation from the prosecutor for the challenge and make no findings of fact" where "a defendant claims that a prosecutor's peremptory challenge of a prospective juror is motivated by discriminatory intent."  Id.

[10] Although our conclusion above is dispositive and requires reversal, we discuss the issues raised by the defendant that may arise at a new trial.

instructions on self-defense and voluntary manslaughter.  See Commonwealth v. Little, 431 Mass. 782, 785 (2000), citing Commonwealth v. Berry, 431 Mass. 326, 334 (2000).  Viewed in this light, the record reveals the following relevant facts, which the jury reasonably could have found.

On the afternoon of May 24, 2012, the victim confronted the defendant regarding the defendant's drug dealing activities on Leyland Street in the Roxbury section of Boston, which the victim regarded as part of his drug territory.  The victim was angry that the defendant was selling drugs in his territory and accused the defendant of "trying to take all the money."  During that confrontation, the victim told the defendant that he did not want the defendant coming around Leyland Street, called the defendant a "snitch," and punched him.  In response, the defendant reached toward his waist -- a gesture arguably understood to mean that person was carrying a firearm -- before leaving Leyland Street without further confrontation.

Later that evening, the defendant returned to Leyland Street.  The victim approached the defendant, who was standing on the street in front of 23 Leyland Street, and an argument ensued.  As the argument escalated, the men began to gesture toward one another as if they were going to fight "up and up" (i.e., without weapons).

The testimony about what happened in the moments prior to the shooting, as with much of the testimony, is in conflict. Viewing the evidence in the light most favorable to the defendant, as we must for this analysis, the jury could have reasonably found as follows. The defendant told a man who had appeared beside him in the street to "look out" for individuals standing on the stairs of the two nearest row houses. Around that same time, the victim's brother departed from one of the row houses and stood on the front steps of 23 Leyland Street; he was holding something in his left hand and had another object tucked into the waist band of his shorts. The victim then moved back toward the row houses and walked away from the crowd toward the area between 19 and 23 Leyland. The victim returned moments later and called out, "It's jammed," after which the defendant started jogging backwards and shooting in the direction of the victim. Somewhere between six and ten gunshots rang out, mostly from the direction of the defendant. The initial shots sounded like they were being fired from the center of the street, followed by a number of shots fired from the entryway of 23 Leyland Street. The victim's brother was standing in the entryway at the time of shooting. The victim was struck with a bullet that entered his lower back and passed through his left lung before leaving through his shoulder.

After being shot, the victim ran toward 19 Leyland Street, where he collapsed on the front steps and died from the gunshot wound to his lower back.

At the scene of the shooting, the police recovered one spent .22 caliber shell casing from the sidewalk in front of 23 Leyland Street and five spent .45 caliber shell casings from the middle of the street.  The police also recovered one spent projectile from the victim's body.  After analyzing the .45 caliber shell casings and the bullet recovered from victim's body during autopsy, a ballistician with the Boston police department concluded that the same .45 caliber weapon discharged both the shell casings and the bullet.  The ballistician further concluded that the shell casing recovered from the sidewalk in front of 23 Leyland was fired from a .22 caliber long rifle.

b.  Discussion.  The evidentiary threshold for a defendant seeking an instruction on self-defense is low, as it is the Commonwealth's burden to prove that the defendant did not act in proper self-defense once the issue is raised.  Commonwealth v. Pike, 428 Mass. 393, 395 (1998), citing Commonwealth v. Harrington, 379 Mass. 446, 450 (1980) (defendant entitled to self-defense instruction "if any view of the evidence" would support instruction).[11]  In determining whether the evidence

_____

[11] The defendant did not lose his right to a self-defense instruction when he asserted a misidentification defense.  If

warrants an instruction on self-defense, we consider the evidence, from any source, and resolve all reasonable inferences in favor of the defendant.  See Commonwealth v. Santos, 454 Mass. 770, 773 (2009); Benoit, 452 Mass. at 227; Pike, supra; Commonwealth v. Toon, 55 Mass. App. Ct. 642, 645 (2002).

When deadly force is used, such as in this case, a defendant is entitled to an instruction on self-defense where there is evidence "permit[ting] at least a reasonable doubt" that the defendant "reasonably and actually believed that he was in 'imminent danger of death or serious bodily harm,'" Pike, 428 Mass. at 396, quoting Harrington, 379 Mass. at 450; that he "availed himself of all proper means to avoid physical combat before resorting to the use of deadly force," Commonwealth v. Pring-Wilson, 448 Mass. 718, 733 (2007), quoting Harrington, supra; and that he "used no more force than was reasonably necessary" in light of the circumstances, Pring-Wilson, supra.

the defendant requests, and the evidence supports, an instruction on self-defense, the Commonwealth must prove its absence beyond a reasonable doubt, and the judge must give a requested self-defense instruction, even when the defendant asserts a misidentification defense.  See Commonwealth v. Thomas, 429 Mass. 146, 154-155 (1999); Commonwealth v. Anderson, 396 Mass. 306, 313 (1985); Commonwealth v. Walden, 380 Mass. 724, 726 (1980).  See also Commonwealth v. Hakkila, 42 Mass. App. Ct. 129, 130 (1997) (defendant could argue, "I didn't do it . . . but if I did do it, it was self-defense").  The Commonwealth is also entitled, over a defendant's objection, to a jury instruction on voluntary manslaughter when the facts could support the lesser offense.  See Commonwealth v. Woodward, 427 Mass. 659, 662-663 (1998).

Additionally, the right of self-defense ordinarily "cannot be claimed by a [person] who provokes or initiates an assault." Commonwealth v. Espada, 450 Mass. 687, 693 (2008), quoting Commonwealth v. Maguire, 375 Mass. 768, 772-773 (1978).

Here, the trial evidence by no means compelled a conclusion that the defendant acted in self-defense, but if the testimony from several witnesses who testified favorably to the defendant were deemed credible, a rational jury could find that the Commonwealth failed to prove beyond a reasonable doubt that the defendant did not shoot the victim in self-defense. Specifically, there was testimony from which the jury could infer that the victim not only escalated the confrontation by displaying a gun, but also tried to shoot the defendant before the victim himself was shot. This evidence, considered in combination with testimony concerning the confrontation between the victim and the defendant earlier that day, would be sufficient to permit a rational jury to find a reasonable doubt whether the defendant had a reasonable and actual belief that he was in imminent danger of being killed or seriously injured. See Commonwealth v. Harris, 464 Mass. 425, 429-430, 432-433 (2013) (overt gesture in combination with statement from victim sufficient to put question of self-defense to jury). See also Commonwealth v. Iacoviello, 90 Mass. App. Ct. 231, 240 (2016). Cf. Commonwealth v. Chambers, 465 Mass. 520, 529-530 (2013)

(victim's prior violent acts admissible to demonstrate propensity for violence where it is disputed whether defendant or victim was first to use or threaten deadly force).

There is also sufficient evidence, resolving all inferences in favor of the defendant, from which a reasonable jury could find that the Commonwealth failed to prove beyond a reasonable doubt that the defendant was the first to threaten deadly force and that he did not avail himself of all proper means to avoid physical combat before resorting to the use of deadly force. Self-defense is generally unavailable where the confrontation occurs on a public street and "where 'there is no evidence that the principal was not able to walk away.'"  Commonwealth v. Avila, 454 Mass. 744, 769 (2009), quoting Commonwealth v. Pasteur, 66 Mass. App. Ct. 812, 820 (2006).  See Berry, 431 Mass. at 335 ("The right to self-defense does not arise unless . . . the defendant took every opportunity to avoid combat . . .").  Our case law does not, however, "impose an absolute duty to retreat regardless of personal safety considerations," Benoit, 452 Mass. at 227; it only requires that a person avoid using deadly force against another if there is a "reasonable avenue of escape available" (emphasis added).  Pike, 428 Mass. at 398.  If a person is threatened with death or serious bodily injury by an aggressor armed with a firearm, in open space away from cover or safety, it would be unreasonable to impose a

categorical rule that requires him or her to be shot in the back in a fruitless attempt to retreat.  If the weapon requires close proximity to inflict injury and threaten death, then retreat in an open space becomes a more viable option so long as the aggressor is not within range to use the weapon.  In light of the myriad possible permutations of facts and circumstances, whether a defendant has used all available and reasonable means to retreat is generally a question of fact.  See Harrington, 379 Mass. at 452 (whether defendant could have retreated was question for fact finder).[12]  Here, there was evidence that the victim had a gun and had tried to shoot the defendant first, and that the defendant was jogging backwards prior to, or at the same time, that he first started shooting at the victim.[13]  Based on this evidence, whether the defendant could have retreated (or

---

[12] Generally, determination whether a defendant has availed himself or herself of "all reasonable means to avoid physical combat before resorting to the use of deadly force depends on all of the circumstances, including the relative physical capabilities of the combatants, the weapons used, the availability of room to maneuver or escape from the area, and the location of the assault."  Model Jury Instructions on Homicide 30 (2018).  See Commonwealth v. Pike, 428 Mass. 393, 399 (1998).

[13] To the extent that the jury heard conflicting testimony regarding whether the victim had turned away from the defendant before the defendant started shooting, the decision whether to accept or reject that testimony was a question for the jury. See Commonwealth v. Santos, 454 Mass. 770, 773 (2009), citing Commonwealth v. Vanderpool, 367 Mass. 743, 746 (1975) (credibility of evidence or whether it is controverted or conflicts with other evidence is question for fact finder).

should have attempted to retreat) from the victim, whom he could have believed had a gun and who had already attempted to fire before the weapon malfunctioned, was a question for the jury. See id. See also Iacoviello, 90 Mass. App. Ct. at 240.

We reach the same conclusion with respect to an instruction on the mitigating circumstance of excessive force in self-defense. In a deadly force case, if the Commonwealth fails to disprove all the elements of self-defense except the element of reasonableness of the force used, then the jury may not return a verdict of murder, but must find the defendant guilty of voluntary manslaughter. See Commonwealth v. Grassie, 476 Mass. 202, 210 (2017), citing Commonwealth v. Glacken, 451 Mass. 163, 167 (2008) (excessive force in self-defense will mitigate murder to voluntary manslaughter); Commonwealth v. Walker, 443 Mass. 213, 216 (2005) (same prerequisites for self-defense apply where defendant seeks instruction on manslaughter based on excessive use of force). The evidence here, considered in the light most favorable to the defendant, warranted instructions on self-defense and voluntary manslaughter based on the theory of excessive use of force in self-defense. See, e.g., Iacoviello, 90 Mass. App. Ct. at 241-242.[14]

---

[14] The defendant does not argue on appeal that he was entitled to jury instructions on voluntary manslaughter based on reasonable provocation or heat of passion caused by sudden combat. Because issues and evidence relevant to these

3.  <u>Conclusion</u>.  The defendant's convictions are vacated and set aside.  The case is remanded to the Superior Court for further proceedings consistent with this opinion.

<u>So ordered</u>.

---

instructions may or may not arise in the same way at the retrial, we do not consider whether the jury should have been instructed on these theories.